No. 96-654

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF THE ESTATE OF

NINA J. GARLAND, Deceased,

     Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Dennis G. Loveless, Attorney at Law, Helena,
          Montana

     For Respondent:

          Carl Hatch; Small, Hatch, Doubek & Pyfer,
          Helena, Montana

Submitted on Briefs: October 17, 1996

Decided: November 15, 1996

Filed:

FILED

NOV 15 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Anson Fredenberg, the personal representative of the Estate of Nina J. Garland, deceased (the Estate), appeals from the order of the First Judicial District Court, Lewis and Clark County, distributing the assets of the Estate. We reverse and remand.

The Estate raises the following issues on appeal:

1. Did the District Court err in concluding that the surviving spouse who killed the deceased spouse is entitled to a one-half interest in the proceeds from the sale of the real property which he and the decedent owned as a matter of law?

2. Did the District Court err in failing to settle and distribute all of the Estate's assets?

Nina J. Garland (Nina) and Larry Garland (Larry) were married in Alaska in 1986. Sometime thereafter, Nina and Larry moved to Montana and purchased a house in Helena, Montana, as joint tenants with the right of survivorship.

Nina died testate on October 22, 1993. Larry subsequently was convicted of deliberate homicide for her death and is presently incarcerated in the Montana State Prison. Two minor daughters survive Nina; one of them, Emily Garland, is also Larry's daughter.

Nina left a will providing for an equal division of her assets between her two daughters. Nina's brother, Anson Fredenberg (Anson), was appointed personal representative of her Estate and Nina's will was admitted to informal probate. Pursuant to a stipulation between the Estate and Larry, the house in Helena which

Larry and Nina owned in joint tenancy was sold and the proceeds placed in a special trust account to be distributed by the District Court.

A hearing on the final distribution of the Estate's assets was held in September of 1995. The Estate and Larry disagreed regarding the proper distribution of the proceeds from the sale of Nina and Larry's house, a Saab automobile and various items of personal property which Larry contended were his premarital property. In its decision and order, the District Court concluded that the Estate and Larry are each entitled to fifty percent of both the proceeds from the sale of the house and any personal property "which Larry cannot prove to have been obtained by him prior to the marriage and used by him exclusively during the marriage[;]" the court included the Saab automobile which was titled in Nina's name in the Estate. The Estate appeals.

> 1. Did the District Court err in concluding that Larry is entitled to a one-half interest in the proceeds from the sale of the real property which he and Nina owned as a matter of law?

Larry and Nina purchased the real property at issue as joint tenants with the right of survivorship and, as a result, each of them owned equal shares in the property. See § 70-1-307, MCA. Ordinarily, upon the death of one joint tenant, the decedent's ownership interest ceases and the jointly-held property immediately passes to the surviving joint tenant as a matter of law. Vogele v. Estate of Schock (1987), 229 Mont. 259, 263, 745 P.2d 1138, 1140.

The District Court recognized that, under § 72-2-813(3)(b), MCA, Nina and Larry's interests in the real property were

3

transformed into tenancies in common upon Nina's death resulting from Larry's felonious act. Relying on the Official Comments to § 72-2-813(3)(b), MCA, however, the court interpreted § 72-2-813(3)(b), MCA, as severing only Nina's interest in the property and allowing that interest to pass under her will, with Larry retaining his equal interest with no right of survivorship. As a result, the District Court concluded that the Estate and Larry each retained a one-half interest in the value of the property as a matter of law.

The Estate argues on appeal that the District Court's conclusion was erroneous. It contends that both Nina and Larry's interests were severed and transformed into tenancies in common pursuant to § 72-2-813(3)(b), MCA, and, therefore, that tenancy in common principles apply. The Estate argues that, under those principles, it was entitled to attempt to prove that Nina contributed more to the property than Larry did, with the potential result that the Estate would receive a larger share of the proceeds from the sale of the property. We review a district court's conclusions of law to determine if the court's interpretation of the law is correct. Loney v. Milodragovich, Dale & Dye, P.C. (1995), 273 Mont. 506, 510, 905 P.2d 158, 161 (citation omitted).

The resolution of this case turns, initially, on the proper interpretation of § 72-2-813(3)(b), MCA, a statute we have not previously construed. Section 72-2-813(3), MCA, provides, in pertinent part:

> The felonious and intentional killing of the decedent:

4

. . . .
(b) severs the interests of the decedent and killer in property held by them at the time of the killing as joint tenants with the right of survivorship and transforms the interests of the decedent and killer into tenancies in common.

Our role in interpreting statutes is simply "to ascertain and declare what is in terms or in substance contained therein. . . ." Section 1-2-101, MCA. We must pursue legislative intent if possible. See § 1-2-102, MCA. Where the intention of the legislature can be determined from the plain meaning of the words used, our role in interpreting the statute is at an end. Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. Where the language is clear and unambiguous, the statute speaks for itself and we will not resort to legislative history or other extrinsic means of interpretation. Clarke, 897 P.2d at 1088.

Section 72-2-813(3)(b), MCA, clearly, unambiguously and in plain language mandates that upon the intentional and felonious killing of one joint tenant by another, the interests of both the decedent and the killer are severed and transformed into tenancies in common. Thus, the killer is divested of the benefits of a joint tenancy--the right to survivorship and ownership of "equal shares" in the property. See § 70-1-307, MCA.

In interpreting § 72-2-813(3)(b), MCA, the District Court relied on the Official Comments to § 72-2-813(3)(b), MCA, in determining that the legislature's purpose in enacting the statute "was to preclude the co-tenant's killer from gaining benefit from his criminal conduct." On that basis, the court concluded that only the decedent's interest is severed and the killer loses only

5

his right of survivorship. Since the language used in § 72-2-813(3)(b), MCA, is clear, unambiguous and plain, however, the court's role in interpreting the statute was at an end and it could not properly resort to legislative history or other extrinsic means of interpretation. See §§ 1-2-101, 1-2-102, MCA; Clarke, 897 P.2d at 1088.

Moreover, in its decision and order, the District Court stated that "the interest of the decedent is severed so that her share passes as her property and her killer has no right of survivorship." The District Court's statement appears to incorporate language from § 72-2-104(2), MCA (1991), the predecessor to § 72-2-813(3)(b), MCA, which provided:

> Any joint tenant who feloniously and intentionally kills another joint tenant thereby effects *a severance of the interest of the decedent so that the share of the decedent passes as his property and the killer has no rights by survivorship*. [Emphasis added.]

Section 72-2-104(2), MCA (1991), was renumbered and substantially revised in 1993. See § 72-2-813(3)(b), MCA (1993). Thus, while the 1991 version of the statute provided for severance of only the decedent's interest, the 1993 version--which remains unchanged-- provides for severance of both the decedent's and the killer's interests in the property held as joint tenants at the time of the killing. Section 72-2-813(3)(b), MCA.

Furthermore, the effect of the statutory severances under the 1991 and 1993 versions of the statute differ significantly. Section 72-2-104(2), MCA (1991), expressly stated that the decedent's interest was severed "so that the share of the decedent

6

passes as his property and *the killer has no rights by survivorship.*" (Emphasis added.) Section 72-2-813(3)(b), MCA, on the other hand, expressly provides that both the decedent's and the killer's interests are severed and that the killing "*transforms the interests of the decedent and killer into tenancies in common.*" (Emphasis added).

Thus, as is evident from a review of the plain language of the statutes, §§ 72-2-104(2), MCA (1991), and 72-2-813(3)(b), MCA, provide for substantially different results based on the same factual situation--the felonious and intentional killing of a joint tenant by another joint tenant. The District Court incorrectly interpreted § 72-2-813(3)(b), MCA, to mandate an effect on the decedent's and killer's interests identical to that mandated under the predecessor statute, § 72-2-104(2), MCA (1991).

Larry relies on In re Estate of Matye (1982), 198 Mont. 317, 645 P.2d 955, in support of his argument that he is entitled to one-half of the proceeds from the sale of the real property he and Nina owned as joint tenants. Estate of Matye is not applicable here.

In Estate of Matye, we addressed a situation factually analogous to the present case. There, the wife killed the husband with whom she owned property in joint tenancy. Estate of Matye, 645 P.2d at 956. The district court determined that the wife was entitled to one-half of the proceeds from the joint tenancy property and the husband's estate appealed. Estate of Matye, 645 P.2d at 956-57.

7

On appeal, we interpreted § 72-2-104(2), MCA (1981), which remained unamended by the legislature through 1991. We concluded that, according to the plain language of the statute, only the decedent's interest was severed and that share must be distributed as property of the decedent without any right of survivorship in the killer. Estate of Matye, 645 P.2d at 957. The effect was that the killer retained her one-half interest in the proceeds of the property. See Estate of Matye, 645 P.2d at 957.

As discussed above, however, § 72-2-104(2), MCA (1981), has since been renumbered and substantially revised. See § 72-2-813(3)(b), MCA. Thus, our analysis in Estate of Matye is inapplicable to the present case in which we interpret and apply § 72-2-813(3)(b), MCA.

We conclude that where a joint tenant kills another joint tenant, the plain language of § 72-2-813(3)(b), MCA, effectuates a severance of both the decedent's and the killer's interests and transforms those interests into tenancies in common as a matter of law. Therefore, in determining the respective interests of the killer and the estate of the decedent under § 72-2-813(3)(b), MCA, district courts must apply the legal rules applicable to tenancies in common.

Section 70-1-313, MCA, defines tenancy in common as an interest "owned by several persons, not in joint ownership or partnership." Thus, unlike § 70-1-307, MCA, which defines joint interests, § 70-1-313, MCA, does not expressly provide for ownership in "equal shares." Nor do tenancies in common under §

8

70-1-313, MCA, include the right of survivorship under which ownership of the entire interest in the joint tenancy property vests in the surviving joint tenant as a matter of law upon the death of the other joint tenant. See Vogele, 745 P.2d at 1140.

Tenants in common presumptively own undivided equal interests in property; however, that presumption is subject to rebuttal. See Sack v. Tomlin (Nev. 1994), 871 P.2d 298, 304; Lawrence v. Harvey (1980), 186 Mont. 314, 322-24, 607 P.2d 551, 557; Ivins v. Hardy (1947), 120 Mont. 35, 42, 179 P.2d 745, 748 (overruled on other grounds). Therefore, on the death of one co-tenant, the surviving co-tenant and the decedent's estate may be entitled to unequal shares in the property. The respective shares of the decedent's estate and the surviving co-tenant depend on the decedent's and the surviving tenant's individual contributions to the acquisition and maintenance of the property. See, e.g., Tomlin, 871 P.2d at 305. Absent proof of disparate contributions, however, the presumption that the co-tenants are entitled to undivided equal interests stands.

Here Nina and Larry's interests were severed and transformed into tenancies in common upon Nina's death. See § 72-2-813(3)(b), MCA. Presumptively, those interests became undivided equal interests in the property; the presumption, however, can be rebutted. See Lawrence, 607 P.2d at 557. Thus, the Estate and Larry's respective shares in the proceeds from the sale of the house ultimately will depend on whether the presumption is rebutted via proof regarding Nina and Larry's disparate individual

9

contributions to the acquisition and maintenance of the property at issue. We hold, therefore, that the District Court erred in concluding that the Estate and Larry are each entitled to fifty percent of the proceeds from the sale of the property Nina and Larry owned as joint tenants as a matter of law.

2. Did the District Court err in failing to settle and distribute all of the Estate's assets?

The Estate argues on appeal that the District Court erred as a matter of law in failing to order the complete settlement and distribution of the Estate's assets and the discharge of Anson from further claims. It relies on § 72-3-1001(3), MCA, which provides:

> After notice to all interested persons and hearing, the court may enter an order or orders, on appropriate conditions, determining the persons entitled to distribution of the estate and, as circumstances require, approving settlement and directing or approving distribution of the estate and discharging the personal representative from further claim or demand of any interested person.

Anson petitioned for determination of testacy and heirs and for settlement and distribution of the Estate's assets pursuant to §§ 72-3-1001(1) and (2), MCA. He also filed a final account which contained a proposed distribution of the Estate's assets. Larry objected to the Estate's final account. He argued that he was entitled to one-half of the proceeds from the sale of the real property he and Nina held as joint tenants, that the Saab automobile should be distributed to him and that various items were his personal premarital assets. The Estate filed an amended final account immediately preceding the hearing in which it requested the court to distribute a retirement account not listed in its original

10

final account and authorize repayment of a debt against the Estate.

In its decision and order, the District Court stated that "[a] hearing on the final distribution of the [Estate's] assets" was held. It subsequently determined that

> [a]ny [personal] property which Larry cannot prove to have been obtained by him prior to the marriage and used by him exclusively during the marriage is deemed to have been held jointly by the parties during the marriage, and as tenants in common from the time of Nina's death.

The court did not address the additional items in the amended final account such as the retirement account. Nor did it settle and distribute the contested personal property which Larry contends is his personal premarital property, leaving the Estate and Larry to continue to dispute the proper disposition of such property. Finally, the District Court did not discharge Anson.

Section 72-3-1001(3), MCA, provides that, in making a final distribution of an estate, a court must discharge the personal representative from further claims by interested persons; however, nothing in § 72-3-1001(3), MCA, mandates that a court settle and distribute an estate at the time requested by the parties. It is unclear in this case whether the District Court intended its decision and order to constitute a final settlement and distribution of the Estate pursuant to § 72-3-1001(3), MCA. What is clear, however, is that the District Court did not meet the statutory requirements for a final distribution by "determining the persons entitled to distribution of the estate and . . . approving settlement and directing . . . distribution of the estate and discharging the personal representative. . . ." See § 72-3-

11

1001(3), MCA.   Therefore, this case must be remanded to the District Court for further proceedings toward final distribution of the Estate.

Reversed and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

November 15, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Dennis G. Loveless
Attorney at Law
P.O. Box 225
Helena, MT  59624

Carl Hatch
Small, Hatch, Doubek & Pyfer
P.O. Box 236
Helena, MT  59624-0236

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy