No. OP 06-0571

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 256

_____

)
STEVE L. RIOS and THE OFFICE OF STATE )
PUBLIC DEFENDER, )
)
         Petitioners, )      O P I N I O N
)      A N D
     v. )      O R D E R
)
JUSTICE COURT, CASCADE COUNTY, SAMUEL L. )
HARRIS, Justice of the Peace, )
)
         Respondents. )
_____)

¶1     Steve L. Rios and the Office of State Public Defender (OSPD) jointly filed a Petition for Writ of Supervisory Control. We entered an Order on August 16, 2006, granting Respondents Justice Court, Cascade County, and Samuel L. Harris, Justice of the Peace, 15 days in which to file a response to the Petition. The Attorney General submitted a response on behalf of the Respondents.

¶2     The State charged Rios with traffic offenses and he appeared in Justice Court before Respondent Judge Harris. Justice Court appointed the OSPD to represent Rios and required Rios to complete the indigency questionnaire required by § 47-1-111, MCA. The court also ordered Rios, however, to appear for a hearing to review his eligibility for public defender services. The court directed him to bring financial documentation to this hearing. The Petition argues that the court's actions exceeded its authority under the statutory provisions governing eligibility of representation by the OSPD.

¶3     Rios and OSPD originally filed the Petition on August 9, 2006. The Petition

included the request that this Court vacate the hearing that the Justice Court had scheduled for August 11, 2006. The Justice Court had not received notice of the filing of the Petition before the hearing, however, and thus proceeded with the hearing as scheduled.

¶4    The Justice Court determined after the hearing that Rios satisfied the criteria to be eligible for public defender services. The Petition thus has been rendered moot with respect to Rios. The Attorney General nevertheless contends that this question likely will arise in future proceedings and, therefore, argues that a justiciable controversy still exists. See *Montana-Dakota Utils. v. City of Billings*, 2003 MT 332, ¶ 10, 318 Mont. 862, ¶ 10, 80 P.3d 1247, ¶ 10. We agree.

¶5    The Attorney General contends that Harris acted properly pursuant to § 47-1-111(1)(b), MCA, in conducting the hearing. The Attorney General argues that a court cannot conduct a meaningful review of a defendant's eligibility for court-appointed counsel without knowing the information that forms the basis of the indigency determination. We agree with the Attorney General's contention that a court must know the basis of the indigency determination in reviewing a defendant's eligibility for court-appointed counsel. We disagree with the Attorney General, however, as to when this review should take place and which party should initiate the review.

> Section 47-1-111(1), MCA, provides as follows:

> 47-1-111. Eligibility--determination of indigency--rules. (1)(a) Beginning July 1, 2006, when a court orders the office to assigned counsel, the office shall immediately assign counsel prior to determination under this section.

> (b) If the person for whom counsel has been assigned is later determined pursuant to this section to be ineligible for public defender services, the office shall immediately notify the court so that the court's order may be rescinded.

(c) A person for whom counsel is assigned is entitled to the full benefit of public defender services until the court's order requiring the assignment is rescinded.

(d) Any determination pursuant to this section is subject to the review and approval of the court.

¶6 The statute provides that the court may appoint OSPD to represent a defendant even before OSPD can determine whether the defendant qualifies for public defender services. Section 47-1-111(1)(a), MCA. This appointment insures that all defendants will be represented by counsel at their initial appearance before a court.

¶7 Once OSPD has been appointed counsel, it is incumbent upon OSPD to determine whether the defendant fits the criteria for eligibility for public defender services. Section 47-1-111(1)(b), MCA. The statute imposes the duty upon OSPD to notify the court immediately in the event that a defendant does not qualify for public defender services so that the court may rescind its order appointing OSPD as counsel for that defendant. Section 47-1-111(b), MCA. OSPD must remain as counsel providing the full benefit of public defender services, however, until the court issues an order rescinding its assignment. Section 47-1-111(c), MCA.

¶8 The statute further provides that any determination by OSPD regarding the eligibility of a defendant for public defender services "is subject to the review and approval of the court." Section 47-1-111(d), MCA. We look first to the plain meaning of the words used in interpreting a statute. *In re Maynard*, 2006 MT 162, ¶ 5, 332 Mont. 485, ¶ 5, 139 P.3d 803, ¶ 5. Subsection (d) provides that the court is to review and approve a determination of eligibility. This provision would make no sense if the initial determination of eligibility were to be undertaken by the court, as argued by Judge Harris

3

and the Attorney General. A court cannot review its own determination of eligibility.

¶9    Subsection (1)(b) further bolsters this interpretation. Subsection (1)(b) directs OSPD to "immediately notify" the court that a defendant is not eligible for public defender services. OSPD would have no need to notify the court, immediately or otherwise, of the own court's determination that a defendant is not eligible for public defender services. We construe, interpret and apply the law so as to avoid absurd results. *State v. McGowan*, 2006 MT 163, ¶ 15, 332 Mont. 490, ¶ 15, 139 P.3d 841, ¶ 15. Statutory construction should not lead to absurd results if a reasonable interpretation would avoid it. *McGowan*, ¶ 15. Subsection (1)(b) makes sense only if someone other than the court determined in the first instance that the defendant was not eligible for public defender services. The statute imposes on OSPD that duty of making an initial determination of eligibility. Thus, contrary to the position advocated by the Attorney General, any judicial review takes place after OSPD has conducted its determination of the defendant's eligibility for public defender services, as contemplated by § 47-1-111(1)(b), MCA.

¶10   We agree with OSPD that the statute limits the court's involvement to those circumstances in which either of the parties request review regarding a defendant's eligibility for public defender services. Subsection (1)(d) allows the court's review of OSPD's determination of eligibility. Subsection (1)(d) further vests in the court the authority to approve OSPD's determination. It also implicitly vests in the court the authority to "disapprove" OSPD's determination. Nowhere in the statute, however, does the Legislature contemplate the court initiating the review process based on its own doubts about a defendant's eligibility. This provision does not authorize a procedure that

4

appears to be designed to assert the court's primary authority over indigency determinations.

¶11 We emphasize subsection (1)(d) states that the court may "review and approve" such determinations. Nothing in the statute states that the court shall "initiate" any such determination. The court's review of OSPD's determination takes place only when one of the parties seeks it. The statute imposes no gatekeeper role on the courts. Accordingly,

¶12 IT IS HEREBY ORDERED that we accept jurisdiction of the matter for purposes of undertaking review of the issues raised.

¶13 IT IS FURTHER ORDERED that the Petition is GRANTED.

¶14 The Clerk of Court shall mail a copy of this Order to all counsel of record.

DATED this 5th day of October, 2006.

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

Justice Jim Rice dissenting.

¶15 During Rios's initial appearance, Judge Harris noted that Rios, although requesting appointment of a public defender, was employed full time at the rate of $12.50 per hour, that his wife was also employed, and that he had no dependents. The court appointed counsel for Rios, but because the initial information, according to Judge Harris's affidavit, "indicated a high probability that Defendant did not qualify for a public

defender," the Judge scheduled a hearing to review Rios's eligibility for defender services.

¶16 The Court strikes down this effort, concluding that the statute "limits the court's involvement to those circumstances in which either of the parties request review regarding a defendant's eligibility for public defender services" because "[n]owhere in the statute . . . does the Legislature contemplate the court initiating the review process based on its own doubts about a defendant's eligibility."

¶17 I find the Court's statutory interpretation, and the implications thereof, to be untenable. Section 47-1-111(1)(d), MCA, clearly states that "[a]ny determination pursuant to this section is subject to the review and approval of the court" and places none of the limitations on the courts which the Court imposes today. Nowhere does the statute limit a court's authority herein "to those circumstances in which either of the parties request review." It makes no sense that a court, empowered to "review" and "approve," is nonetheless rendered powerless to "inquire."

¶18 As the Attorney General notes, trial courts retain broad discretion to conduct the matters which come before them and to provide for the orderly administration of justice. However, on the basis of restrictions it reads into the statute, the Court today bars trial courts from exercising any discretion, or even making an inquiry, into a defender matter which arises before it. I cannot agree with this handcuffing of the courts, which should be able to act *sua sponte* when a matter of concern comes to its attention. I would review such actions under an abuse of discretion standard.

¶19 Since the effective date of the new defender statute, Judge Harris has ordered the appointment of the State Public Defender in approximately 100 cases. This case

6

presented the first instance wherein information came to the court which raised a question—in my view, a legitimate question—about the defendant's eligibility for defender services.  I would conclude that Judge Harris appropriately made inquiry, was not prohibited by law from doing so, and did not abuse his discretion in resolving the matter.


/S/ JIM RICE