FILED

July 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0285

DA 13-0285

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 200

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

MICHELLE COLLER GABLE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2011-289
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant Attorney General, Helena, Montana

            Leo G. Gallagher, Lewis and Clark County Attorney, Melissa C. Broch, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  June 17, 2015
Decided:  July 14, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Michelle Coller Gable (Gable) appeals from the Montana First Judicial District Court, Lewis and Clark County, judgment ordering her to pay the $36,920 cost of her appointed Public Defender. We affirm.

¶2 Gable presents the following issues for review:

> 1. *Did the District Court fail to question Gable regarding her ability to pay the costs of appointed counsel?*
>
> 2. *Did the District Court fail to determine that Gable had or would have the ability to pay the costs of appointed counsel?*
>
> 3. *Was Gable's constitutional right to a jury trial undermined by requiring her to pay costs of appointed counsel?*
>
> 4. *Was Gable's objection sufficient to preserve for appeal the failure of the Office of State Public Defender (OPD) to file with the court its hours and expenses as required by the statute?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 After a jury trial, Gable was found guilty of two counts of Deliberate Homicide for the murder of her husband Joseph Gable (Joe) and Sunday Cooley Bennett. The presentence investigation report (PSI) recommended that Gable be given two consecutive 100-year sentences, and that the $36,920 cost of appointed counsel be assigned to Gable, as well as juror and witness fees. The State also submitted a sentencing memorandum, detailing Gable's assets. Gable's assets included vehicles held jointly with Joe, $10,000 in cash held in evidence, and a possible interest in a bank account at Andrews Federal Credit Union (AFCU). At sentencing Gable read a prepared statement to the District Court which did not address her means or ability to pay cost of appointed counsel.

2

¶4 Gina Rasmussen (Rasmussen), the PSI author, testified at sentencing that the likelihood of Gable finding a paying job in prison was low considering she was wheelchair bound; that Gable's current age was 49; and that Gable would likely be in prison for 50 or 60 years before she would be eligible for parole.

¶5 The District Court accepted the PSI recommendations and sentenced Gable to the Montana Women's Prison for two consecutive 100-year sentences. The District Court concluded, based on the evidence presented, that Gable had or would have the ability to pay certain costs associated with her prosecution, and ordered Gable to pay: $36,920 to the OPD for the cost of her appointed counsel; $5,650.48 for juror fees; and $1,917.63 for witness fees. Gable did not object to juror or witness fees at the hearing, but she did object to the cost of appointed counsel, arguing that she was indigent.

## STANDARDS OF REVIEW

¶6 This Court reviews criminal sentences of more than one year of incarceration for legality only. *State v. Moore*, 2012 MT 95, ¶ 10, 365 Mont. 13, 277 P.3d 1212. This Court reviews de novo whether a district court adhered to the applicable sentencing provisions. *Moore*, ¶ 10. A sentence is legal if it falls within the statutory parameters. *State v. Hernandez*, 2009 MT 341, ¶ 3, 353 Mont. 111, 220 P.3d 25. Generally, we will not review issues when the defendant has failed to make a contemporaneous objection to the alleged error in the trial court. Section 46-20-104(2), MCA. Gable concedes she has not preserved for our review issues related to juror or witness fees and, consequently, we will only review Gable's objection to the application of the cost of appointed counsel.

¶7 The Court permits a party to bolster arguments as long as the underlying legal theory remains the same. *State v. Montgomery*, 2010 MT 193, ¶ 12, 357 Mont. 348, 239 P.3d 929. Gable has objected because she believed herself to be indigent. Additional arguments that follow that legal theory were preserved for appeal. *Montgomery*, ¶ 12.

## DISCUSSION

¶8 *1. Did the District Court fail to question Gable as to her ability to pay the costs of appointed counsel?*

¶9 Section 46-8-113(1), MCA, authorizes courts to order costs of appointed counsel assigned to represent a defendant. Pursuant to § 46-8-113(3), MCA, the court must question the defendant as to his or her ability to pay the costs. Gable argues, based on *Moore*, that the District Court failed to question her pursuant to § 46-8-113(3), MCA. We disagree.

¶10 In *Moore* we found that the requirements of § 46-8-113(3), MCA, had not been met when the District Court failed to directly question Moore regarding his ability to pay and appeared to rely solely on the PSI, which did not explore Moore's ability to pay. *Moore*, ¶ 14. However, the fees that Moore appealed were not specifically suggested in the PSI; the PSI at hand recommended that Gable pay the cost of her attorney. *Moore*, ¶ 6. Further, Rasmussen testified to Gable's potential future earnings and the State and Defense discussed Gable's ability to pay with the court. Gable also read a prepared statement and had the opportunity to address her ability to pay the court ordered costs recommended in the PSI. Instead, Gable chose not to address, in any way, her ability to pay. The record of Gable's sentencing hearing is thus distinguishable from *Moore* and depicts an adequate examination by the District Court of Gable's ability to pay costs.

¶11   *2. Did the District Court fail to determine that Gable had or would have the ability to pay the costs of appointed counsel?*

¶12   A review of the record convinces us that the District Court also complied with § 46-8-113(4), MCA, which directs that "[t]he court may not sentence a defendant to pay the costs for assigned counsel unless the defendant is or will be able to pay . . . ."  Again, in contrast to *Moore*, the District Court did not rely *only* on the PSI report when determining Gable's ability to pay, but rather questioned both the State and Defense about Gable's ability to pay.  The State's sentencing memorandum noted the following assets:  a 2006 Ford Econoline Van; a 2005 Saturn Ion; a 2003 Harley Davidson motorcycle; a 1997 Honda 4SA; $10,000 in cash held in evidence; and a possible checking account with AFCU.  Gable had two checks mailed to her from an AFCU account while she was in pretrial detention which totaled $37,582.11.  However, as the checks were held for more than 180 days, they became void.  AFCU would not disclose who owned the account without a warrant and Gable did not voluntarily provide any information to the court regarding these accounts.

¶13   The basis of Gable's appeal is premised on her status as an indigent defendant determined by the OPD.  Gable argues that because she is indigent she does not have the ability to pay the costs assigned to her.  Gable's status as an indigent defendant, determined only by the OPD in its decision regarding representation, does not bind a court in its statutory obligation to consider a defendant's ability to pay.  The fact that the OPD has determined Gable to be indigent is not binding on a court.  *Christ v. Larson*, 374 Mont. 540 (table), 346 P.3d 363 (table), 2014 Mont. Lexis 203 (2014); *Rios v. Justice Court*, 2006 MT 256, 334 Mont. 111, 148 P.3d 602; § 7-1-111(1)(d), MCA, ("[a]ny determination [of

5

indigency] pursuant to this section is subject to the review and approval of the court. The propriety of an assignment of counsel by the office is subject to inquiry by the court, and the court may deny the assignment").

¶14    Gable argued to the District Court during the sentencing hearing that, pursuant to the provisions of § 72-2-813, MCA, Gable would forfeit any ability to profit from Joe's estate. Section 72-2-813, MCA, provides, in relevant part:

> (2) An individual who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property, and a family allowance. If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed the killer's intestate share.
> (3) The felonious and intentional killing of the decedent:
>
> .   .   .
>
> (b) severs the interests of the decedent and killer in property held by them at the time of the killing as joint tenants with the right of survivorship and transforms the interests of the decedent and killer into tenancies in common.
>
> .   .   .
>
> (10) for the purposes of this section, a felonious and intentional killing includes deliberate homicide as defined in 45-5-102 and mitigated deliberated homicide as defined in 45-5-103.

Section 72-2-813(2),(3),(3)(b),(10), MCA.

¶15    This Court first interpreted the provisions of § 72-2-813, MCA, in *In re Estate of Garland*, 279 Mont. 269, 275-6, 928 P.2d 928, 932 (1996). There, we considered a claim that the decedent had contributed more to the maintenance of marital property than her husband, who had killed her. We observed that the plain language of § 72-2-813(3)(b), MCA, effectuates a severance of both the decedent's and the killer's interests and transforms

6

those interests into tenancies in common as a matter of law. *Garland*, 279 Mont. at 275-6, 928 P.2d at 931. Therefore, in determining the killer's and decedent's interests under § 72-2-813(3)(b), MCA, district courts must apply the legal rules applicable to tenancies in common. *Garland*, 279 Mont. at 275-6, 928 P.2d at 931. While tenants in common presumptively own undivided equal interests in property, the presumption is subject to rebuttal and the surviving co-tenant and the decedent's estate may not be entitled to equal shares. *Garland*, *279* Mont. at 276, 928 P. 2d at 932. The acquisition and maintenance of the property can affect the shares of the decedent and surviving co-tenant. *Garland*, 279 Mont. at 275, 928 P.2d at 932. However, "[a]bsent proof of disparate contributions . . . the presumption that the co-tenants are entitled to undivided equal interests stands." *Garland*, 279 Mont. at 276, 928 P.2d at 932.

¶16    When a district court must make a determination during criminal sentencing regarding a defendant's ability to pay costs, the court is required to take into account the provisions of § 72-2-813, MCA, and its effects on the availability of defendant's assets to pay those costs. Here, Gable and Joe's jointly held property interests were severed and transformed into tenancies in common upon Joe's death. Presumptively those interests became undivided equal interests in property, subject to rebuttal that there were disparate individual contributions to the acquisition and maintenance of the property. The District Court correctly concluded that Gable had available to her for payment of costs of appointed counsel at least some portion of the assets previously held jointly with Joe. Absent proof of disparate contributions, the District Court was entitled to rely on the presumption that Gable,

7

as a tenant in common, owned an undivided equal interest in the property. *Garland*, 279 Mont. at 276, 928 p.2d at 932.

¶17 The District Court had evidence before it that Gable had assets consisting of three vehicles and a motorcycle, $10,000 in cash held in evidence, and a possible account with AFCU where checks totaling $37,582.11 had been issued. Gable had the opportunity to disclose information regarding the AFCU account, but failed to provide Rasmussen any explanation stating only that "It's all been taken from me now." The District Court questioned Rasmussen and counsel about Gable's prospects of future earnings and ability to pay costs and considered the provisions of § 72-2-813, MCA. Finally, in contrast to *Moore*, the District Court did find the evidence presented demonstrated Gable had the ability to pay costs. Our review of the record convinces us that the requirements of § 46-8-113(3), (4), MCA, were met.

¶18 Finally, to the extent that the District Court did not make specific findings regarding which asset Gable could utilize to pay costs, those findings are implicit in the court's determination that assets were available. This Court has adopted the doctrine of implied findings for purposes of reviewing findings of fact. *Hughes v. Hughes*, 2013 MT 176, ¶ 30, 370 Mont. 499, 305 P.3d 772; *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985). That doctrine provides that where "findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *Interstate Brands*, 218 Mont. at 384, 708 P.2d at 576. Here, the record clearly supported a finding that the District Court considered numerous assets that were available to Gable for payment of costs of appointed counsel and

8

extensively considered Gable's ability to pay. The District Court's failure to identify specific assets does not demonstrate a less "scrupulous" or "meticulous" inquiry.

¶19 *3. Was Gable's constitutional right to a jury trial undermined by requiring her to pay costs of appointed counsel?*

¶20 Gable argues she should not have been assigned the cost of her appointed counsel because it had a "chilling effect" on her constitutional right to a jury trial. Gable maintains, presumably in part because the costs of appointed counsel will be higher if a case proceeds to jury trial, that requiring an indigent to pay costs of appointed counsel undermines Gable's right to a jury trial.

¶21 Each person has the right to a jury trial and that right "shall remain inviolate." Mont. Const. art. II, § 26. In accord with this principle, we recognized in *Moore* that to require a defendant to pay costs of a jury trial poses a potential "chilling effect" on an indigent defendant's right to a jury trial. A defendant who cannot afford to pay the costs of a jury trial may forego a jury trial, even if her best interests require the matter be resolved by a jury. *Moore*, ¶ 18. As a result, courts, prior to the imposition of costs of jury service, must "first scrupulously and meticulously determine[ ] the defendant's ability to pay those costs." *Moore*, ¶ 18.

¶22 Gable claims attorney fees should be considered a trial-related fee like jury and witness fees and therefore courts should consider the chilling effect of assigning cost of appointed counsel. The statute in *Moore*, § 46-18-232(2), MCA, and the statute here, § 46-8-113(4), MCA, are very similar, with the exception § 46-18-232(2), MCA, has the additional requirement that the court take into account "the future ability of the defendant to

pay costs." We agree that the same concern for chilling the right to a jury trial when assigning witness and jury fees are present when assigning the cost of appointed attorney fees. We therefore impose the same burden on the court to scrupulously and meticulously examine the defendant's ability to pay before costs of appointed counsel may be imposed.

¶23 As discussed above, the District Court here spent a significant amount of time considering whether Gable had the assets available to pay costs of appointed counsel and, in fact, considered Gable's future ability to pay. In finding that Gable had the ability to pay the costs of appointed counsel, the District Court considered Rasmussen's testimony, the PSI, the State's sentencing memorandum setting forth specifically Gable's assets, arguments from both the State and Gable, and relevant statutes and case law. It is therefore clear that the court's inquiry satisfied the requirement that the ability to pay be scrupulously and meticulously determined, and consequently, no chilling of Gable's constitutional rights to a jury trial occurred.

¶24    *4. Was Gable's objection sufficient to preserve for appeal the failure of the OPD to file with the court its hours and expenses as required by the statute?*

¶25    Finally, § 46-8-113(1)(b), MCA, requires that when a court assigns the cost of an appointed attorney the "office of state public defender shall file with the court a statement of the hours spent on the case and the costs and expenses incurred for trial." Here, although the PSI contained the total amount for counsel fees, it did not itemize the hours spent or the costs and expenses associated with Gable's representation. However, despite a party being allowed some latitude to bolster arguments on appeal, Gable's general objection that she was indigent cannot reasonably be construed as including an objection to the itemization of costs sufficient to preserve this issue for appeal. If Gable had concerns regarding the amount, or if she did not believe it was accurate, she had the opportunity to cross Rasmussen about the amount and to make any appropriate objection. Gable did neither. We therefore will not address this issue on appeal. We nevertheless observe the requirement that hours, costs, and expenses of representation be adequately itemized and set forth by the OPD should not be disregarded.

## CONCLUSION

¶26    The District Court complied with the provisions of § 46-8-113(3), MCA, and § 46-8-113(4), MCA. The District Court considered evidence of Gable's assets; discussed Gable's ability to pay with both parties; and questioned the PSI author about Gable's assets and likelihood of future earnings. The record establishes extensive consideration of the provisions of § 72-2-813, MCA, and its effects on Gable's assets. The inquiry by the court was sufficient and protected against the potential chilling effect of awarding costs on Gable's

constitutional right to a jury trial. The absence of an itemization of costs of appointed counsel was not properly preserved for appeal.

¶27 The judgment of the District Court is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE