RENDERED:  APRIL 4, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1493-MR

JASON SPEARS                                                          APPELLANT

v.
APPEAL FROM MONROE CIRCUIT COURT
HONORABLE DAVID WILLIAMS, JUDGE
ACTION NO. 22-CR-00084

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
VACATING IN PART AND REMANDING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE:  Jason Spears appeals from the judgment and sentence following entry of his unconditional guilty plea.  After a thorough review of the facts and the law, we vacate in part and remand for entry of a new judgment.

## I.    BACKGROUND

On September 15, 2022, Officer Ty Hammer with the Tompkinsville Police Department observed Spears driving a vehicle with an expired registration

plate. After initiating a traffic stop, the officer approached the vehicle and noticed Spears had bloodshot eyes, profuse sweating, fidgety mannerisms, and rapid speech. Officer Hammer conducted a K9 sniff search around the vehicle, and the dog gave a positive alert at the driver's side door. During a search of the vehicle, the officer discovered a clear plastic bag containing suspected methamphetamine and a glass pipe with white residue, at which point Spears was placed under arrest. Following his arrest, the grand jury indicted Spears on the following charges: operating a motor vehicle under the influence of alcohol or other substances (DUI) (third offense with aggravating circumstances);[1] first-degree possession of a controlled substance;[2] possession of drug paraphernalia;[3] failure to maintain insurance on a motor vehicle;[4] and expired registration plates.[5]

Prior to his arraignment, Spears filed financial disclosures indicating he earned $1,000 per month, he owned a vehicle worth approximately $1,800, and he owned real estate of "unknown" value. (Record (R.) at 12.) Spears's income

---

[1] Kentucky Revised Statute (KRS) 189A.010(5)(c), punishable by a fine of $500 to $1,000, a term between sixty days and twelve months in the county jail, and up to twelve months of community service.

[2] KRS 218A.1415, a Class D felony with a maximum penalty of three-years' incarceration.

[3] KRS 218A.500, a Class A misdemeanor.

[4] KRS 304.39-080, a Class B misdemeanor pursuant to KRS 304.99-060.

[5] KRS 186.170, a violation pursuant to KRS 186.990.

was derived solely from working on his father's farm. Based on his disclosures, the district court determined that Spears was indigent and appointed representation for him with the Department of Public Advocacy (DPA). (R. at 14.) Later, Spears would update his financial disclosures to indicate he received only $300 per month working on the farm, noting on the form that his income "varies." (R. at 22.)

Spears was arraigned on November 10, 2022, after which the case was delayed for several months pending the receipt of test results on the evidence from the Kentucky State Police Forensic Laboratory. The record shows that those test results arrived and were disclosed to defense counsel on July 6, 2023. (R. at 40.) In the meantime, the prosecutor offered Spears diversion on his drug possession charge and a minimum sentence on his DUI, in exchange for a guilty plea. Despite this generous plea offer, Spears still wished to proceed to trial, and the trial date was eventually set for Monday, October 30, 2023. However, during the late afternoon on the Friday immediately prior to the trial, Spears and the Commonwealth finally came to an agreement on the plea offer.

On the morning of October 30th, the trial court began with a jury roll call, after which counsel approached the bench to talk about the plea deal. Defense counsel reminded the court she had been in contact on Friday to tell him about the plea. The trial court interjected, "at 4:01," referring to how late in the day this occurred. The trial court, clearly annoyed, stated that it would not accept any plea

at this point unless it was a "naked" plea, without any assurances for Spears. The trial court asserted that Spears "had plenty of time to negotiate this, and he didn't accept it." Defense counsel then stated that Spears had no prior felonies, which the trial court said it would consider. Defense counsel then told the court that the plea offer had been for pretrial diversion, but the trial court bluntly dismissed the idea, stating that Spears was not going to receive diversion. The trial court's stated focus was on the members of the jury pool who were "inconvenienced" by being called in for a trial.

After a short break in these proceedings, Spears appeared before the trial court, which gave him a plea colloquy. Spears then entered the naked guilty plea, after which the trial court informed the jury pool that this was the first time he had ever called a jury in a case which did not proceed to trial. The trial court also informed the jury pool that Spears had entered a plea "to the maximum" sentence, pending a presentence investigation (PSI). The trial court then set the formal sentencing date for November 9, 2023. Three days before sentencing, on November 6, 2023, the Commonwealth moved the trial court to enter an order mandating that Spears should pay jury costs in the case. We note here that the Commonwealth cited no legal authority supporting the award of such costs to the Commonwealth but merely pointed out that Spears "had ample opportunity to enter a plea prior to the morning of trial, October 30, 2023."

-4-

At Spears's sentencing on November 9, 2023, the trial court began by amending the PSI based on information from counsel. The trial court then amended the DUI charge to reflect it was a second offense, rather than a third, and it dismissed the registration and insurance charges based on the Commonwealth's information. The trial court stated it would grant the Commonwealth's motion requiring Spears to pay jury costs.[6] When the trial court asked the Commonwealth for a recommended sentence in the case, the Commonwealth replied that Spears should receive the maximum sentence. Defense counsel asked the court to consider probation.

The trial court then swore in Spears, who told the court that it took him so long to plead because he was ashamed and did not wish to hurt his children. He admitted he made some bad decisions and told the trial court that he was willing to do drug court or anything he could, but he did not want to be away from his children. The trial court, unmoved, sentenced Spears to the maximum concurrent sentence of three-years' incarceration. The trial court said that Spears was "showing remorse now," but he was "very inconsiderate of the time of the jurors." The trial court said it would consider shock probation at a later time. At

---

[6] On the same day as the sentencing, November 9, 2023, the trial court entered a written order granting the Commonwealth's motion, ordering Spears to pay "court costs as regards the present sixty-nine (69) jurors in the amount of eight hundred sixty-two dollars and fifty cents ($862.50)." (R. at 61.) This amount is reiterated in the formal judgment under "Court Costs, Restitution, Fee, Fines, and Forfeitures" as "Fees in the amount of $862.50." (R. at 64.)

this point, defense counsel told the trial court that the offense was subject to presumptive probation under the statute. The trial court asked her if she wished for him to make written findings on that issue. Defense counsel answered in the affirmative, but there is no indication in the record that the trial court ever did so.

The trial court entered its written judgment on November 20, 2023, sentencing Spears to a concurrent term of fourteen days for the DUI charge, twelve months for the drug paraphernalia charge, and three years for the drug possession charge. In addition, Spears was sentenced to a number of costs, fines, and fees, including a specific assessment for jury costs in the amount of $862.50. (R. at 61, 64.) This appeal followed.

## II. ANALYSIS

Spears presents two arguments on appeal. First, he contends the trial court should have granted him presumptive probation for his drug possession offense, pursuant to KRS 218A.1415(2)(d). However, before we may analyze the issue, "we must be certain an actual case or controversy exists." *Belt v. Commonwealth Cabinet for Families and Children*, 520 S.W.3d 406, 408 (Ky. App. 2017). At oral argument, counsel informed this Court that Spears had been paroled, he had successfully completed parole, and he was no longer under supervision by the Department of Corrections. Counsel then agreed that these circumstances rendered Spears's first issue on appeal moot.

-6-

An issue is moot when it "cannot have any practical legal effect upon a *then* existing controversy." *Id.* (quoting *Norton Hosps., Inc. v. Willett*, 483 S.W.3d 842, 845 (Ky. 2016)). "Appellate courts lack subject matter jurisdiction to decide cases that have become moot." *Commonwealth, Kentucky Bd. of Nursing v. Sullivan University System, Inc.*, 433 S.W.3d 341, 343 (Ky. 2014). Although there are exceptions to the mootness doctrine, as outlined in *Morgan v. Getter*, 441 S.W.3d 94, 100 (Ky. 2014), the only one which appears potentially applicable is that the issue is "capable of repetition, yet evading review[.]" (Citation omitted.) The test for this exception has two elements: "(1) the challenged action must be too short in duration to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.*

In a relatively recent case, the Kentucky Supreme Court explained that "a meaningful difference exists between issues whose shelf life may be measured in days and those which are most often measured in months and years." *Commonwealth v. Collinsworth*, 628 S.W.3d 82, 86 (Ky. 2021). Continuing its analysis, the Supreme Court reasoned that, in felony cases, "which often carry stiff penalties and significant periods of incarceration, we can reasonably expect that future litigants will have an opportunity to bring this matter to the Court's attention in a live controversy." *Id.* Applying this reasoning to the present matter, we

cannot say that this issue falls into the category of being "capable of repetition, yet evading review." *Id.* Even though Spears was placed on parole relatively quickly, we can reasonably expect that other litigants in future felony cases involving this issue will not be so situated. For these reasons, we cannot consider the question of whether the trial court erred when it failed to grant Spears presumptive probation, in conformity with KRS 218A.1415(2)(d), as the issue is now moot.

In his second and only remaining issue on appeal, Spears contends the trial court erroneously imposed jury costs in the amount of $862.50. Spears admits this issue is not preserved, but he correctly asserts we may review the legality of an imposed sentence regardless of preservation. "A waiver of the right to appeal in a guilty plea does not extinguish all appealable issues[,]" and the legality of a sentencing issue is one example. *Grigsby v. Commonwealth*, 302 S.W.3d 52, 54 (Ky. 2010) (citations omitted). "[A]n appellate court is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial court." *Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014) (quoting *Jones v. Commonwealth*, 382 S.W.3d 22, 27 (Ky. 2011)).

We review a trial court's imposition of criminal penalties for abuse of discretion. *Elliott v. Commonwealth*, 553 S.W.3d 207, 210 (Ky. 2018). "So we will not disturb the trial court's sentencing determination unless convinced that its decision was arbitrary, unreasonable, unfair, or unsupported by sound legal

principles." *Id.* (quoting *Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016)).  At the same time, however, we review interpretations of statutes *de novo*, without deference to the trial court.  *Id.* (citing *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011)).

Spears contends "[t]he Trial Court imposition of a jury fee[7] in this case has no legal basis and is an illegal sentence."  (Appellant's Brief at 8.)  Spears also points out that KRS 29A.330(4) prohibits the imposition of jury costs on individuals determined to be indigent.  For its part, the Commonwealth asserts KRS 29A.330(2) allows jury fees to be assessed against the unsuccessful party and argues this permits the imposition of jury costs against a criminal defendant.  However, somewhat counterintuitively, the Commonwealth argues against Spears's interpretation of KRS 29A.330(4), a provision in the same statute, contending that KRS 29A.330(4) only applies in civil cases because it refers to a "plaintiff."  In essence, the Commonwealth asks us to interpret the jury fee statute, KRS 29A.330, broadly in one respect, in order to view jury fees or costs as appropriate in both civil and criminal trials, and narrowly in another respect, in order to view the non-imposition of a jury fee or cost due to poverty as only

---

[7]  Both Spears and the Commonwealth frequently use the term "jury fee" for the $862.50 assessed by the trial court, likely because that is how it is named in KRS 29A.330.  The trial court's final judgment also dubbed this amount a "fee."  However, the Commonwealth's motion to the trial court and the trial court's resulting order framed it as "court costs."

applicable in civil cases. We decline the Commonwealth's invitation to participate in a logical inconsistency.

"In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly." *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). In addition, "[w]e presume that the General Assembly intended for *the statute to be construed as a whole*, for all of its parts to have meaning, and for it to harmonize with related statutes. . . . We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one." *Id.* (emphasis added) (citations omitted). KRS 29A.330, regarding jury fees, begins by stating "(1) The jury fee for a *civil* trial in Circuit Court and District Court shall be set in accordance with KRS 48.195." (Emphasis added.) There is nothing in the remainder of the statute which contradicts this initial indication that the statute is aimed at civil trials. Furthermore, the statute goes on to state "(2) The jury fee shall be assessed as costs against the unsuccessful party upon judgment or dismissal of the action." The Commonwealth asks us to interpret this as applicable to criminal cases, but it is clear from context that "the jury fee" written in (2) refers to the jury fee implemented in (1); *i.e.*, "[t]he jury fee for a civil trial." If there is statutory support for the imposition of jury costs in a criminal case, we cannot agree with the Commonwealth that such support may be found in KRS 29A.330.

Apparently recognizing the lack of support for assessing jury costs in Kentucky against a criminal defendant, the Commonwealth's secondary argument is that, "[a]lthough seemingly rare, nothing in the statutes or case law forbids the assessment of a jury fee on a criminal defendant." (Commonwealth's Brief at 9.) The Commonwealth argues that *Spicer v. Commonwealth*, 442 S.W.3d 26 (Ky. 2014), should apply by analogy. In *Spicer*, the Kentucky Supreme Court ruled that because the trial court was never asked to rule on the defendant's status as a "poor" person under KRS 23A.205 to avoid court costs, only as a "needy" person under KRS 31.110, the imposition of court costs was not illegal. *Id*. at 35. Here, the Commonwealth argues the imposition of the jury costs was similarly legitimate because Spears failed to argue before the trial court that he was a "poor" person and thus costs were not appropriate in his case.

The Commonwealth's argument based on *Spicer* might be persuasive if it could cite any basis in Kentucky law for imposing jury costs on a criminal defendant. KRS 29A.330, *supra*, applies to civil juries. The Commonwealth's argument that "nothing . . . forbids the assessment of a jury fee on a criminal defendant[,]" and so it must be allowed, would be an impermissible expansion of judicial power at the expense of the legislative branch.

"Court costs in a criminal case are mandated by statute." *Elliott*, 553 S.W.3d at 210. The General Assembly specifically spells out the fees and costs

which may be assessed against criminal defendants. The basic court cost for a criminal case is found in KRS 23A.205, which states that a criminal defendant must pay one hundred dollars unless the court finds that the defendant is a poor person as defined in KRS 453.190(2). The General Assembly then followed this baseline court cost in criminal cases with a number of added costs or fees for specific crimes or to fund specific programs:

- KRS 23A.206(2) adds twenty dollars to the amount in KRS 23A.205 to fund police services for local governments and to "counties with fiscal responsibilities for jails or the transporting of prisoners."

- KRS 23A.2065 adds ten dollars to the twenty-dollar cost created in KRS 23A.206, in order to fund "the implementation and operation of a telephonic behavioral health jail triage system as provided in KRS 210.365 and 441.048."

- KRS 23A.207 specifies fees for preparation of documents in criminal cases.

- KRS 23A.208 adds an administrative fee of thirty dollars in what it refers to as sex crimes,[8] stalking,[9] or the "criminal attempt, conspiracy, facilitation, or solicitation" to commit such crimes. This administrative fee is used to fund the "Safe at Home Program" established in KRS 14.260.

- KRS 23A.209 adds a fee of ten dollars in criminal cases to fund the Kentucky Internet Crimes Against Children Task Force.

---

[8] The statute defines "sex crimes" as those offenses found in KRS Chapter 510, KRS 530.020, KRS 530.064(1)(a), KRS 531.310, and KRS 531.320. KRS 23A.208(1)(a).

[9] The statute defines "stalking" as "conduct prohibited under KRS 508.140 and 508.150[.]" KRS 23A.208(1)(b).

-12-

- KRS 23A.220 allows a fiscal court, by ordinance, to assess twenty-five dollars in criminal cases "for the purpose of paying expenses for courthouses, bonds related to them, and administration expenses of the Circuit Court[.]"

In addition to this basic list, there are a number of other monetary assessments authorized by statutes in criminal cases; *e.g.*, the jail fees authorized by KRS 441.265 and KRS 532.356, and the DUI service fee authorized by KRS 189A.050. Based on these examples, the Commonwealth's second essential argument that, "if nothing forbids the court from doing it, it must be allowed" is deeply flawed and wholly unpersuasive. An analogy based on *Spicer* cannot succeed when the Commonwealth has failed to provide any relevant authority supporting the trial court's assessment of jury costs on a criminal defendant at all. Even those sister jurisdictions which allow the state to recoup jury costs or fees from criminal defendants generally rely on a specific statutory authorization.[10]

---

[10] *See, e.g.*, LaFave et al., Criminal Procedure *Financial sanctions* § 26.1(f) n.181 (4th ed. 2024) (collecting cases) (citing *Johnson v. Texas*, 562 S.W.3d 168 (Tex. App. 2018) (statute governing $40 jury fee); *Montana v. Gable*, 2015 MT 200, 380 Mont. 101, 354 P.3d 566 (2015) (statute allowing jury fee requires the court to "scrupulously and meticulously" inquire into defendant's ability to pay); *Washington v. Diaz-Farias*, 191 Wash. App. 512, 524, 362 P.3d 322 (2015) ($250 statutory jury fee); *Ohree v. Virginia*, 26 Va. App. 299, 494 S.E.2d 484 (1998) (statute allows recovery of actual jury costs)).

LaFave also points to other states which forbid jury fees or orders which include jury expenses, citing *Howard v. Florida*, 213 So.3d 1076 (Fla. Dist. Ct. App. 2017); *Michigan v. Hope*, 297 Mich. 115, 297 N.W. 206 (1941); *Louisiana v. Rideau*, 943 So.2d 559 (La. 2006); *Idaho v. Hanson*, 92 Idaho 665, 448 P.2d 758 (1968); *Gooch v. Indiana*, 685 N.E.2d 152, 155 (Ind. Ct. App. 1997); and *New Mexico v. Ayala*, 95 N.M. 464, 623 P.2d 584 (N. M. App. 1981). Per LaFave, in these states, the stated rationales for forbidding jury costs include unconstitutionality, lack of an authorizing statute, or that jury costs are a "general expense" of the court system.

The Commonwealth's assertion that the issue of jury costs levied against a criminal defendant being "seemingly rare" is borne out by our research. We have found only one case, *Brockman v. Commonwealth*, 185 S.W.3d 205 (Ky. 2005), in which a jury fee was assessed in a criminal context, and that was an instance of indirect criminal contempt, which does not fit the facts of the present case. *Id*. at 208. We note that there appear to be some district courts in Kentucky which purport to allow a trial court to impose jury costs on a criminal defendant under certain circumstances.[11] However, returning to the current matter, the Commonwealth does not cite a similar rule for the Monroe Circuit Court, nor have we found one independently.

In researching the matter in sister jurisdictions, we find the approach taken by the Seventh Circuit of the United States Court of Appeals to be particularly persuasive. In *United States v. Banks-Giombetti*, 245 F.3d 949 (7th Cir. 2001), the Court considered a nearly identical issue when the district court

---

[11] *See, e.g.*, Ky. R. Henry, Oldham, and Trimble Dist. Ct. Rule IX ("A criminal defendant who fails to appear at his/her scheduled jury trial may be ordered to pay the full cost of all jury fees."); Ky. R. Garrard, Jessamine, and Lincoln Dist. Ct. Rule 10 ("A criminal defendant who fails to appear at his/her scheduled jury trial may be ordered to pay the full cost of all jury fees."); Ky. R. Nelson Dist. Ct. Rule 9 ("904. If a jury is summonsed and a criminal defendant fails to appear at his/her scheduled jury trial the Defendant may be ordered to pay the full cost of all jury fees. If a jury is needlessly summonsed due to the failure of a party or the parties to notify the Court in time for the Clerk to notify the jury not to appear all jury fees may be imposed against the responsible party or parties."). Our research has not shown whether these rules have been challenged at the appellate level.

sanctioned the defendant with the costs of assembling a jury when he entered a plea on the morning of the trial, as the court was preparing the jury venire. The Seventh Circuit vacated the jury costs, holding that "absent an authorizing statute, a Federal Rule of Criminal Procedure, or a local rule, a district court may not impose a sanction or other disadvantage for noncompliance with any requirement arising from a source other than a statute or rule without first giving the party *actual notice* of the requirement." *Id*. at 953 (emphasis added) (citing Fed. R. Crim. P. 57(b)).

The Commonwealth has not identified, nor have we found in the record, any indication that the trial court entered an order or otherwise informed Spears of a time limit on entry of a negotiated plea, or that entry of a late plea would result in sanctions. It is also worth noting that Spears would not have been able to negotiate a plea on the Friday before trial if the Commonwealth did not also participate in that negotiation. If the trial court had placed some sort of deadline on a negotiated plea, it seems likely that the Commonwealth would have been aware of it. It appears then, from the record and the facts, that the trial court sanctioned Spears for the jury costs without providing notice that his late plea would be penalized in such a way. We are persuaded, as was the Seventh Circuit, that such a procedure is impermissible. *Id*.

Spears argues the imposition of jury costs infringes on a criminal defendant's constitutional right to a jury, and indeed, the right to a jury is held in particular reverence in Kentucky. "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 908 S.W.2d 104, 106 (Ky. 1995) (quoting KY. CONST. § 7). However, a discussion of the possible constitutionality of assessing jury costs is unnecessary at this time. The portion of the trial court's judgment which assessed jury costs against Spears lacked authority, either by statute or by rule, and Spears was given no notice of the possible sanction. "A sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal sentence is inherently an abuse of discretion." *Phon v. Commonwealth*, 545 S.W.3d 284, 302 (Ky. 2018) (citation omitted).

## III.   CONCLUSION

For the foregoing reasons, we vacate that portion of the judgment which assessed jury costs against Spears in the amount of $862.50, and we remand for entry of a new judgment conforming with this Opinion.


ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Matthew R. Krygiel
Frankfort, Kentucky