FILED

12/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0488

DA 16-0488

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 317

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

MURRY KIM REYNOLDS,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 20 14-279
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Moses Okeyo, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman;
Assistant Attorney General, Helena, Montana

            William E. Fulbright, Ravalli County Attorney, Angela Wetzsteon,
Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  August 23, 2017

Decided:  December 28, 2017

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Murry Kim Reynolds (Reynolds) was convicted of felony Driving While Under the Influence of Alcohol, fourth or subsequent offense (DUI), and two misdemeanors: Failure To Have Liability Insurance In Effect and Failure To Drive On The Right Side Of The Roadway.  He does not challenge his convictions on appeal; however, he appeals from the June 21, 2016 Judgment in which the District Court imposed fines, surcharges, prosecution costs, public defender costs, and court technology fees.  We affirm in part and reverse in part.

¶2    We restate the issues on appeal as follows:

> *Issue One:  Did the District Court err by failing to adequately determine Reynolds's ability to pay before imposing fines, surcharges, prosecution costs, and public defender fees?*

> *Issue Two:  Did the District Court err by imposing statutory surcharges and court user fees?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    On November 19, 2014, Reynolds was charged by Information in Ravalli County with felony DUI and two misdemeanors:  Failure To Have Liability Insurance In Effect and Failure To Drive On The Right Side Of The Roadway.  On March 5, 2015, Reynolds and the State entered into a plea agreement, in which the State agreed to drop the misdemeanors and Reynolds would plead guilty to the felony.  The court ordered a presentence investigation (PSI) report, which was filed on June 18, 2015.  The PSI report specifically addressed the felony charge and made recommendations for sentencing and imposition of fees.  The PSI report also discussed Reynolds's financial situation.

2

¶4 Specifically, the PSI reported that: (1) Reynolds had been employed part-time at Caras Property Management earning approximately $1,500 per month; (2) his assets were $3,000 and his debts were $5,000; (3) his wife was employed part-time earning approximately $700 per month; (4) he paid $500 in rent monthly; (5) he owned two vehicles valued at $5,500 and tools valued at $3,000, and outstanding loans on the vehicles totaled $5,000. The PSI also reported that Reynolds planned to be semi-retired and to expand his welding into a part-time business, and that he was in "fair" health, but had kidney stones and was on medication for high blood pressure. The PSI report concluded Reynolds had the ability to pay the fines and fees associated with the felony DUI, including an $800 public defender fee.[1] Reynolds requested the court to "be as lenient as possible" due to his record, age, and health.

¶5 Prior to sentencing, Reynolds filed an unopposed motion to withdraw his guilty plea, which the District Court granted. A jury trial was held on May 9-10, 2016, on all three charges. At trial, Reynolds testified he was retired, but that prior to retirement he was employed as a maintenance man at a local rental agency and a welder. Reynolds testified his past jobs were "tough work," resulting in numerous physical injuries and ailments, which prevented him from doing too much physical work. He testified he had been diagnosed with PTSD and had been on medication for the condition for the past eight years. The jury found Reynolds guilty on all three charges.

---

[1] Section 46-8-113, MCA. If the defendant pleads guilty to one of more felony charges prior to trial, the cost of counsel is $800. However, if the case goes to trial, the defendant shall pay the costs incurred by the office of state public defender for providing the defendant with counsel in the criminal trial.

3

¶6      At the May 19, 2016 sentencing hearing, the District Court commented that the Montana Supreme Court had recently handed down a new case requiring him, as the judge, to have detailed findings regarding the defendant's ability to pay for any fines, fees, or costs it imposed.  The District Court then delayed sentencing, as it did not have the actual fees incurred by the public defender's office for Reynolds's defense or Reynolds's current employment status, prospects, or financial situation.  The court required Reynolds to produce his tax returns; a full financial statement, including holdings; his wife's finances; and property, real or otherwise.  In response to the District Court order, Reynolds produced his 2015 joint income tax return, which showed a total income of $19,144.  The bank statements showed deposits totaling $1,830.54 for April 2016 and $1,766.83 for May 2016.  Both totals for the month include a $1,090 social security deposit.

¶7      At the June 2, 2016 sentencing hearing, Reynolds's public defender filed notice stating he had incurred $5,829 in fees while representing Reynolds.  During the hearing Reynolds testified that (1) he was not currently employed; (2) his only income was social security benefits; (3) he planned to work "on the side" as a welder but lost his driver's license due to his DUIs; (4) he paid $500 per month in rent; (5) he had two vehicles, each with an outstanding loan—$1,000 on his Chevy and $1,800 on his wife's Buick—with monthly payments of $100 on each vehicle; and (6) he had no other debts.  Reynolds opined that he would lose his social security benefits during incarceration, which would hurt his family financially.

4

¶8 The District Court then directly questioned Reynolds regarding his ability to work and earn money.

> THE COURT: So, sir, it sounds like if you can do welding on the side you're at least capable of work, earning money; yes?
>
> REYNOLDS: Easy work, easy welding work, not crawling around someplace up tall.

¶9 The District Court referenced the PSI report and asked if there were any changes or corrections offered by either party. The only change requested was the report's indication that this was a plea agreement. The District Court then asked about the State's sentencing report. The State recommended the statutory sentence, thirteen months in the Department of Corrections (DOC) followed by a five-year suspended sentence and the minimum fine, $1,000. Reynolds's counsel recommended a thirteen-month sentence, that the suspended sentence be reduced from five to three years, and that Reynolds pay the minimum fine but no other court costs, fees, or attorney's fees. Reynolds's counsel reminded the court it is "required to make specific finding that Mr. Reynolds is or will be able to pay all those fines, fees, [and] court costs" and that the court "must take into account financial resources, his future ability to pay, and the nature of the burden that payment would put him in." Reynolds's counsel argued Reynolds's only source of income is social security, which is not subject to any garnishment, and in fact cannot be used in determining income. Further, Reynolds's counsel argued that the imposition of any fees or costs would create a hardship because all of Reynolds's money is currently going toward paying rent, vehicle loans, groceries, gas, and other essentials of life.

¶10     The District Court proceeded with sentencing.  It acknowledged that the PSI was written one year prior to the current sentencing hearing and that the report indicated Reynolds was in fair health.  The District Court acknowledged that Reynolds had testified he was "still busy doing some employment," and that no evidence contradicted the fact that Reynolds was still in fair health.  The District Court determined that Reynolds was "fit, able to work, earn money to pay toward your fines, fees, and surcharges without considering your social security," based on Reynolds's recent employment at Caras Property Management, where he was making $1,500 per month, and his ability to weld on the side.  The District Court calculated the yearly burden the fines, fees, and costs would impose on Reynolds.

¶11     The District Court sentenced Reynolds to thirteen months to the custody of the DOC; if Reynolds completed the residential alcohol treatment program, any remainder of the thirteen months would be suspended.  The initial sentence would be followed by a five-year suspended DOC commitment.  The court imposed fees, fines, statutory surcharges, and the full public defender fee on Reynolds.  The District Court attempted to calculate a payment plan for Reynolds but had some mathematical errors.  The District Court stated that "the reasons for the court's sentence should be obvious":  three DUIs and continued risky behavior of drinking and driving, his disrespectful attitude[2] toward Trooper Gane the night of the DUI, his obvious alcohol problem, and the benefits five

_____

[2] The night of the DUI, Trooper Gane conducted a field sobriety test, which Reynolds failed.  Trooper Gane asked Reynolds to perform a preliminary breath test, which he refused. Trooper Gane then asked Reynolds to perform a blood test at the hospital, to which Reynolds responded, "No, you're not taking a f***ing blood test."  Trooper Gane advised Reynolds he would apply for a search warrant, to which Reynolds responded, "You Gestapo sons of bitches."

years of probation could provide. Additionally, the court acknowledged the sentence was consistent with the recommendations of the State, the probation and parole office, and the prior plea agreement in this case.

¶12 Reynolds's counsel objected to the court costs, jury costs, and the public defender fee. He argued, based on Reynolds's social security income and financial resources, that it is unreasonable that Reynolds can be found to have the ability to pay this fee; that it is a hardship under § 46-18-232, MCA; and that it is a violation of Mr. Reynolds's constitutional right to trial. The District Court acknowledged the objection and upheld the fees. The court again stated it was not basing Reynolds's ability to pay on his social security income, but based it on Reynolds's trial testimony that he was fit and able to earn money and had been doing so recently.

¶13 A week later, on June 9, 2016, the court sentenced Reynolds for the two misdemeanor charges. On the failure to have liability insurance charge, the court sentenced Reynolds to ten days in jail, all suspended. On the driving on the wrong side of the roadway charge, the court imposed a $10 fine.

¶14 The court issued its written judgment on June 21, 2016. Regarding the felony DUI, Reynolds was sentenced to thirteen months to the DOC, followed by a five-year commitment to DOC with all five years suspended, a $1,000 fine (§ 61-8-731, MCA), a $50 surcharge (§ 46-18-236(1)(c), MCA), a statutory $20 surcharge (§ 46-18-236(1)(b), MCA), and a $10 court technology fee (§ 3-1-317, MCA). Regarding the failure to have liability insurance misdemeanor, Reynolds was sentenced to ten days in jail, all

7

suspended, a statutory $15 surcharge (§ 46-18-236(1)(b), MCA), and a $10 court technology fee (§ 3-1-317, MCA).  With regard to the failure to drive on the right side of the roadway misdemeanor, Reynolds was sentenced to a $10 fine (§ 61-8-711, MCA); a statutory $15 surcharge (§ 46-18-236(1)(b), MCA), and a $10 court technology fee (§ 3-1-317, MCA).  Additionally, the court imposed a $5,829 repayment of public defender fee (§ 46-8-113, MCA), a $50 crime victim surcharge, $100 prosecution cost, and the cost of supervision during his suspended sentence.  Reynolds appeals.

## STANDARD OF REVIEW

¶15  This Court reviews fines as sentencing conditions.  In reviewing a sentencing condition, we first review the condition for legality, to determine whether it falls within statutory parameters.  A sentence outside the statutory parameters is illegal.  Our standard of review of that question of law is de novo.  If the condition is legal, we then review its reasonableness to determine whether the district court abused its discretion.  *State v. Dennison*, 2008 MT 344, ¶ 10, 346 Mont. 295, 194 P.3d 704.

¶16  A district court's determination of a "defendant's . . . ability to pay . . . is essentially a finding of fact that this Court will reverse only if it is clearly erroneous." *State v. Holt*, 2006 MT 151, ¶ 23, 332 Mont. 426, 139 P.3d 819.  A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made.  *State v. Reynolds*, 2017 MT 25, ¶ 13, 386 Mont. 267, 389 P.3d 243.

8

¶17    *Issue One:  Did the District Court err by failing to adequately determine Reynolds's ability to pay before imposing fines, surcharges, prosecution costs, and public defender fees?*

¶18    Reynolds argues the District Court failed to adequately determine his ability to pay before imposing fines, public defender fees, conviction surcharges, and prosecution costs.

¶19    The $1,000 felony DUI fine and the $10 misdemeanor traffic violation fine are statutorily mandated.  A person found guilty of felony DUI "shall be punished by . . . a fine in an amount of not less than $1,000."  Section 61-8-731, MCA (2013).  A person convicted of a misdemeanor traffic violation, such as failure to drive on the right side of the roadway, "shall for a first conviction be punished by a fine of not less than $10."  Section 61-8-711(2), MCA.  As such, the penalty is not subject to the discretionary authority provided to district courts under the general sentencing statutes.  Section 46-18-201, MCA, et seq.  Discretionary sentencing statutes do not apply to mandatory fines.  *See State v. Tam Thanh Le*, 2017 MT 82, ¶ 12, 387 Mont. 224, 392 P.3d 607; *State v. Mingus*, 2004 MT 24, ¶ 15, 319 Mont. 349, 84 P.3d 658.  The District Court properly imposed a legal sentence on Reynolds.  The District Court did not abuse its discretion when it imposed these statutory fines.

¶20    Prior to the imposition of a fine, fee, or charge, the final determination a district court must make is whether the defendant has the ability to pay.  Prior to the imposition of the costs of jury service, costs of prosecution, costs of pretrial, probation, or community service, a district court "shall take into account the financial resources of the

defendant, the future ability of the defendant to pay costs, and the nature of the burden that payment of costs will impose." Section 46-18-232(2), MCA. Prior to the imposition of the costs incurred by the office of state public defender, the court "shall take into account the financial resources of the defendant and the nature of the burden that payment of costs will impose." Section 46-8-113(4), MCA. Prior to the imposition of fines in felony and misdemeanor cases, the court "shall take into account the nature of the crime committed, the financial resources of the offender, and the nature of the burden that payment of the fine will impose." Section 46-18-231(3), MCA.

¶21 If a sentencing court determines the defendant cannot pay, the court may not sentence a defendant to pay costs or may waive the payment of surcharges, fines, costs, and fees. *See* § 46-18-232(2), MCA (court may not sentence a defendant to pay costs unless the defendant is or will be able to pay them); § 46-8-113(4), MCA (the court may not sentence a defendant to pay the costs for assigned counsel unless the defendant is or will be able to pay the costs imposed); § 46-18-231(3), MCA (the sentencing judge may not sentence an offender to pay a fine unless the offender is or will be able to pay the fine); § 3-1-317(3), MCA (court may waive surcharge for court information technology); § 46-18-236(2), MCA (if the court determines under § 46-18-232, MCA, or § 46-18-231, MCA, that the person is not able to pay the fine and costs or is unable to pay within a reasonable time, the court shall waive payment of the charge imposed by this section).

¶22 It is clear that a sentencing court must question and determine the defendant's ability to pay fines, fees, surcharges, and costs prior to their imposition. It is equally

clear that the district court has the discretion to determine that a defendant is unable to pay and therefore, not impose or waive such discretionary costs, fines, fees, and surcharges.

¶23 Reynolds argues the District Court erred when it determined Reynolds was required to pay $5,829 for his public defender, a $50 surcharge, a $20 surcharge, two $15 surcharges, three $10 court technology fees, a $50 victim surcharge, and a $100 prosecution cost, without "scrupulously and meticulously" examining Reynolds's ability to pay and the hardship which the costs, fees, and surcharges would impose. *State v. Gable*, 2015 MT 200, ¶ 23, 380 Mont. 101, 354 P.3d 566. We disagree and find the record shows the court's inquiry into Reynolds's ability to pay was scrupulously and meticulously determined.

¶24 In *State v. McLeod*, we determined that the district court had failed to comply with the requirements in § 46-18-231(3), MCA, before imposing a $1,000 fine. 2002 MT 348, ¶ 34, 313 Mont. 358, 61 P.3d 126. The district court was required to demonstrate a "serious inquiry and separate determination" regarding McLeod's ability to pay. *McLeod*, ¶ 34. While the record reflected the district court read the PSI report, it relied on an incorrect section of the PSI to inform the sentence, failed to discuss on the record or with McLeod whether he had the ability to pay the fine, or take into account the financial hardship the fine would impose. *McLeod*, ¶ 33. We reversed and remanded for consideration into McLeod's ability to pay and financial hardship, concluding the court

failed to consider whether the defendant will be able to pay the fine, the defendant's financial resources, and the burden that the fine would impose. *McLeod*, ¶ 35.

¶25 In *State v. Moore*, the district court failed to acknowledge the PSI report or directly question the defendant about his ability to pay the costs of his public defender. 2012 MT 95, ¶ 14, 365 Mont. 13, 277 P.3d 1212. The defendant's only statement was an apology. Based on this, the court had failed to "demonstrate a serious inquiry or separate determination" into the defendant's ability to pay the fee. *Moore*, ¶ 14 (citing *McLeod*, ¶ 34). Moreover, we determined that a court cannot apply the portion of § 46-18-232(1), MCA, that allows for imposition of costs of jury service on the defendant, without "first scrupulously and meticulously determining the defendant's ability to pay." *Moore*, ¶ 18.

¶26 In *State v. Gable*, we determined that the court adequately examined Gable's ability to pay costs. 2015 MT 200, ¶ 10, 380 Mont. 101, 354 P.3d 566. In *Gable*, the district court demonstrated a "serious inquiry or separate determination" of Gable's ability to pay costs of appointed counsel, § 46-8-113, MCA, by relying on the PSI report, the State and defense questions specific to Gable's ability to pay, the sentencing memorandum, and Gable's testimony. *Gable*, ¶¶ 12, 23. In *Gable*, we also determined in order to prevent violation of a defendant's right to a jury trial, the district court must also "scrupulously and meticulously examine the defendant's ability to pay before costs of appointed counsel may be imposed." *Gable*, ¶ 22. The district court spent significant time considering whether Gable had the assets and future ability to pay costs of appointed

12

counsel. This was sufficient to satisfy the requirement that the ability to pay be "scrupulously and meticulously" determined. *Gable*, ¶ 12.

¶27 In this case, prior to imposing the cost of his public defender, surcharges, supervision fees, prosecution costs, and court technology fees, the District Court spent significant time considering Reynolds's ability to pay. As stated above, the District Court delved into Reynolds's work history, ability to work, and financial circumstances before concluding Reynolds was fit to earn money and would be able to pay the fees and costs over the term of his five-year suspended sentence. The record shows the District Court "scrupulously and meticulously" examined Reynolds's ability to pay the public defender fee and engaged in the same inquiry regarding his ability to pay the costs and fees associated with his felony DUI. *Gable*, ¶ 23.

¶28 Reynolds argues the District Court could not have scrupulously and meticulously determined he was able to pay because the District Court based its sentence on the PSI report, never examined the hardship the costs would have on Reynolds, and that the fees associated with his representation had a chilling effect on his right to a jury trial. As stated above, the District Court did use the PSI report to inform Reynolds's sentence. The record reflects that the District Court based its determination for the amount of fees and costs on Reynolds's testimony, direct questioning of Reynolds, the PSI report, the financial information provided by Reynolds, and the record of trial. We find no error in the District Court's use of the PSI to inform the sentence.

¶29 While the District Court did not directly question whether Reynolds would feel a financial hardship by the imposition of the fees, his counsel made it clear that he would. The District Court acknowledged the hardship the sentence would impose on Reynolds, including the loss of his social security during his incarceration and the inability for Reynolds to retire during his suspended sentence. Further, the District Court acknowledged that payments would be manageable during the five-year suspended sentence, and while incorrectly, did calculate the payments on record. While the District Court made a computational error, the defense counsel did not object or correct the District Court's assumption. The District Court clearly understood the burden and hardship Reynolds would be put under, yet after a scrupulous and meticulous examination, it found the fees and costs appropriate. The District Court did not abuse its discretion. Additionally, the District Court did not chill Reynolds's constitutional right to a jury trial, because it engaged in a scrupulous and meticulous examination of Reynolds's ability to pay his public defender costs. *Gable*, ¶ 22.

¶30 To the extent Reynolds argues the District Court failed to adequately determine his ability to pay certain fines and fees immediately upon sentencing, that argument is without merit. "Whenever a defendant is sentenced to pay . . . costs under . . . § 46-18-232, the court may grant permission for payment to be made within a specified period of time or in specified installments. If no such permission is included in the sentence, the payment is due immediately." Section 46-18-234, MCA. Reynolds has failed to make more than a cursory argument on this point or assert he was in fact

required to pay the fine immediately after sentencing; therefore, we decline to address this argument. *State v. Kearney*, 2005 MT 171, ¶ 16, 327 Mont. 485, 115 P.3d 214.

¶31 The District Court did not abuse its discretion. The District Court appropriately inquired into Reynolds's ability to pay fines, fees, and charges prior to their imposition.

¶32 *Issue Two: Did the District Court err by imposing statutory surcharges and court user fees?*

¶33 The District Court imposed a $15 surcharge for each misdemeanor, $30 total. A district court may not substantively increase a defendant's orally imposed criminal sentence in the subsequent written judgment. *State v. Johnson*, 2000 MT 290, ¶ 24, 302 Mont. 265, 14 P.3d 480. The State concedes that the District Court did not impose the two $15 surcharges ($30 total) in the oral judgment, yet that those charges were included in the written judgment.

¶34 The District Court imposed a $10 court information technology fee for each charge, $30 total. A court "shall impose . . . on a defendant in criminal cases, a $10 user surcharge upon conviction." Section 3-1-317(1)(a), MCA. This surcharge is "authorized per user upon conviction, not per conviction of that user." *State v. Pope*, 2017 MT 12, ¶ 32, 386 Mont. 194, 387 P.3d 870. The District Court incorrectly imposed three $10 court information technology fees. The proper surcharge is $10 total. Section 3-1-317(1)(a), MCA.

¶35 Reynolds's judgment must be amended to remove the two $15 misdemeanor surcharges. A court information technology fee is imposed per user, not per charge; as

15

such, Reynolds's judgment must be amended to remove two of the three $10 court information technology fees, leaving only one $10 fee.

## CONCLUSION

¶36    The District Court scrupulously and meticulously examined Reynolds's ability to pay fines, fees, surcharges, and costs prior to their imposition. The District Court did not abuse its discretion.

¶37    The misdemeanor surcharges totaling $30 and the court technology fee for the misdemeanors totaling $20 were incorrectly imposed in the written judgment and therefore must be stricken from Reynolds's criminal sentence. This matter is remanded to the District Court for action in conformity with this Opinion.

¶38    Affirmed and remanded for correction of the judgment.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE