FILED

06/16/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0111

DA 18-0111

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 154

STATE OF MONTANA,

Plaintiff and Appellee,

v.

NATHAN LEE STILLSMOKING,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 17-355
Honorable Elizabeth Best, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Jeremiah Langston, Assistant
Attorney General, Helena, Montana

Joshua A. Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: April 22, 2020

Decided: June 16, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Nathan Lee Stillsmoking (Stillsmoking) appeals the Sentencing Order and Judgment issued by the Eighth Judicial District Court, Cascade County, on December 21, 2017, following his conviction of Assault on a Peace Officer, a felony, in violation of § 45-5-210(1)(b), MCA.

¶2 Stillsmoking raises three issues on appeal, which we restate as follows:

*1. Whether there was sufficient evidence to convict Stillsmoking of assault on a peace officer.*

*2. Whether trial counsel provided ineffective assistance of counsel by conceding that Stillsmoking used a weapon.*

*3. Whether the district court erred when it did not clarify a jury question.*

¶3 We reverse on issue one and therefore do not address the other issues appealed by Stillsmoking.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Stillsmoking is friends with James Parker (Parker). Stillsmoking and Parker like to mess around and pull pranks on each other by occasionally shooting slingshots and BB guns at each other. On May 21, 2017, Parker shot Stillsmoking with a BB gun. Stillsmoking was not hurt. The next evening, Stillsmoking was at home in his apartment in Great Falls, waiting for Parker to pick him up. Stillsmoking had borrowed a broken BB gun[1] from a friend because he wanted to pull a prank on Parker when he arrived.

---

[1] The parties alternately describe this as a "BB gun" and a "CO2 pellet gun" in their briefing. For clarity, we refer to it as a BB gun throughout this opinion.

2

¶5     Earlier in the day on May 22, 2017, Stillsmoking had been at the Holiday Casino in Great Falls. While at the casino, he spoke with Renae Beerman (Beerman), an employee of the casino. Stillsmoking told Beerman that a couple of people in the casino owed him money and he would return to the casino with a gun to collect from them. After Stillsmoking left the casino, Beerman called the police and asked them to inform Stillsmoking that he had been trespassed from the casino and was no longer welcome there. Great Falls Police Sergeant Smail and Officers Garner and Wilberding responded to the call. After the officers identified Stillsmoking on the casino's surveillance footage, they went to Stillsmoking's apartment intending to inform him that he had been trespassed from the casino.

¶6     Stillsmoking—unaware that he had been trespassed from the casino or that police were on the way to his house—sat watching TV in his apartment and waited to pull his prank on Parker. It was dark outside and Stillsmoking's back was to the door. The front door was open, but the screen door was shut. Stillsmoking heard someone approach the front door, and, assuming it was Parker, stood up, grabbed the BB gun, spun around, aimed the broken BB gun out the door, and yelled "come get you some!" Parker was not the person outside the door, however, as it was actually Sergeant Smail coming to tell Stillsmoking that he had been trespassed from the casino. Officers Garner and Wilberding were also outside of Stillsmoking's apartment but did not approach the door.

¶7     Sergeant Smail, seeing what appeared to be a gun pointed at him from inside of the apartment, yelled to the other officers that there was a gun and retreated from the door,

3

fearing for his life. Sergeant Smail then called for backup. Stillsmoking ran away from the apartment and was discovered hiding outside of a nearby residence by Sergeant Smail a short time later. Stillsmoking stood up, read Sergeant Smail's badge, and said, "[y]ou got me, Smail." Stillsmoking was arrested and charged with one count of assault on a peace officer, one count of obstructing justice, and one count of disorderly conduct. The charges of obstructing justice and disorderly conduct were dismissed before trial. After arresting Stillsmoking, officers searched his apartment and discovered the broken BB gun Stillsmoking had pointed at Sergeant Smail.

¶8     In November 2017, the matter went to trial on the single charge of assault on a peace officer. Both Stillsmoking and Officer Wilberding testified that the BB gun was broken and nonfunctional on May 22, 2017. Though it was uncontested that the BB gun did not work, Stillsmoking's counsel did not contest that Stillsmoking used a weapon during the incident, instead focusing his defense on Stillsmoking not knowing he was pointing the BB gun at a police officer because he was expecting it to be Parker outside of the door. The jury found Stillsmoking guilty of assault on a peace officer. The District Court sentenced him to eight years at the Montana State Prison with no time suspended. Stillsmoking appeals.

**STANDARD OF REVIEW**

¶9     This Court reviews de novo whether sufficient evidence supports a conviction. *State v. Daniels*, 2019 MT 214, ¶ 27, 397 Mont. 204, 448 P.3d 511 (citing *State v. Polak*, 2018 MT 174, ¶ 14, 392 Mont. 90, 422 P.3d 112). There is sufficient evidence to support a

4

conviction if, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Michelotti*, 2018 MT 158, ¶ 9, 392 Mont. 33, 420 P.3d 1020 (citing *State v. Clark*, 2008 MT 419, ¶ 14, 347 Mont. 354, 198 P.3d 809).

## DISCUSSION

¶10   *1. Whether there was sufficient evidence to convict Stillsmoking of assault on a peace officer.*

¶11   On appeal, Stillsmoking argues the State did not, and could not, present sufficient evidence to convict him of assault on a peace officer because he did not use a "weapon" during the incident. The State concedes Stillsmoking used "a nonfunctioning CO2 pellet gun," but argues Sergeant Smail only needed to have a reasonable apprehension Stillsmoking had a weapon to meet the "use of a weapon" element in the assault on a peace officer statute. We agree with Stillsmoking that use of an actual weapon is required for a conviction pursuant to § 45-5-210(1)(b), MCA, and the non-operational BB gun does not qualify as a "weapon" under the facts of this case.

¶12   In 1997, the Legislature created the new offense of assault on a peace officer or judicial officer, separating it from the offense of felony assault. Section 45-5-210, MCA (1997) (1997 Mont. Laws ch. 433, § 1). The 1997 felony assault statute provided that "[a] person commits the offense of felony assault if the person purposely or knowingly causes: (a) bodily injury to another with a weapon; or (b) reasonable apprehension of serious bodily injury in another by use of a weapon." Section 45-5-202(2), MCA (1997). "Weapon" was

statutorily defined as an "instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Section 45-2-101(76), MCA (1997). The assault on a peace officer or judicial officer statute provided:

> A person commits the offense of assault on a peace officer or judicial officer if the person purposely or knowingly causes:
>
> (a) bodily injury to a peace officer or judicial officer;
>
> (b) reasonable apprehension of serious bodily injury in a peace officer or judicial officer by use of a weapon;
>
> (c) bodily injury to a peace officer or judicial officer with a weapon; or
>
> (d) serious bodily injury to a peace officer or judicial officer.

Section 45-5-210(1), MCA (1997). The assault on a peace officer statute has not been amended since coming into force on April 29, 1997.

¶13　In the case of *In re R.L.S.*, 1999 MT 34, 293 Mont. 288, 977 P.2d 967, R.L.S., a minor, was charged in Youth Court with one count of misdemeanor disorderly conduct and five counts of felony assault for causing reasonable apprehension of bodily injury in another by use of a weapon for placing "a device which appeared to be a bomb" under a sink in a restroom of his middle school. *In re R.L.S.*, ¶ 3. The device was seen by five people who believed it to be a real bomb and were concerned for their safety. The device was not an actual bomb, however, but a fake bomb which R.L.S. intended as a practical joke. *In re R.L.S.*, ¶ 3. R.L.S. moved to dismiss the felony assault charges, asserting the facts alleged in the State's petition did not constitute the offense of felony assault because

the petition did not allege the device was a "weapon" as defined by § 45-2-101(76), MCA (1997).[2] *In re R.L.S.*, ¶¶ 4, 6. The Youth Court denied R.L.S.'s motion to dismiss the felony assault charges. *In re R.L.S.*, ¶ 4.

¶14 On appeal, we reversed the Youth Court's denial of R.L.S.'s motion to dismiss the felony assault charges because he did not use a "weapon" as statutorily defined. We concluded the statutory definition of "weapon" "clearly and unambiguously requires that the device at issue actually be capable of producing death or serious bodily injury." *In re R.L.S.*, ¶ 18. Because R.L.S. did not use a "weapon," he could not be convicted of an offense which, by its plain language, required the use of a "weapon." Though the State argued that "a device constitutes a weapon if the victim is reasonably apprehensive that the device is a weapon" in *In re R.L.S.*, we disagreed and noted the "reasonable apprehension of the victim pertains to whether the victim reasonably believes he or she will be seriously bodily injured, not whether he or she subjectively believes that the device or instrument used by the assailant is actually a weapon." *In re R.L.S.*, ¶¶ 13-14. The State makes much the same argument in the present case, arguing that because Sergeant Smail believed the broken BB gun was in fact a real gun, it constituted a "weapon" under the assault on a peace officer statute. We give the same answer in this case that we did in *In re R.L.S.*—an

---

[2] The statutory definition of "weapon" is now found in § 45-2-101(79), MCA. "Weapon" is still defined as an "instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury."

offense which requires the use of a "weapon," by its plain language, must be committed with a "weapon."

¶15    Shortly after we decided *In re R.L.S.*, the Legislature renamed the offense of "felony assault" to "assault with a weapon" and modified its language:

> A person commits the offense of assault with a weapon if the person purposely or knowingly causes:
>
> (a) bodily injury to another with a weapon; or
>
> (b) reasonable apprehension of serious bodily injury in another by use of a weapon *or what reasonably appears to be a weapon*.

Section 45-5-213(1), MCA (1999) (emphasis added) (1999 Mont. Laws ch. 432, § 7). The Legislature did not modify the language of the assault on a peace officer or judicial officer statute. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. "Where the statutory language is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe." *State v. Running Wolf*, 2020 MT 24, ¶ 15, 398 Mont. 403, 457 P.3d 218 (internal quotations and citations omitted). As such, while a person can be convicted of assault with a weapon pursuant to § 45-5-213(1)(b), MCA, for using "what reasonably appears to be a weapon," a conviction for assault on a peace officer pursuant to § 45-5-210(1)(b), MCA, still clearly and unambiguously requires the "use of a weapon[.]"

¶16    Similar to the argument it made regarding the felony assault statute in *In re R.L.S.*, the State now argues, "it would be illogical to examine 'serious bodily injury' based on the

8

victim's reasonable apprehension and not do the same for 'use of a weapon.'" The State cites to *State v. Steele*, 2004 MT 275, 323 Mont. 204, 99 P.3d 210, and *State v. Kirn*, 2012 MT 69, 364 Mont. 356, 274 P.3d 746, for this contention; however, neither case provides support for the State's position that the "weapon" element of the assault on a peace officer statute can be satisfied by an officer's reasonable apprehension of a weapon when no "weapon" exists. Both *Steele* and *Kirn* involved challenges to the sufficiency of the evidence after a conviction for assault on a peace officer pursuant to § 45-5-210(1)(b), MCA. *See Steele*, ¶ 31; *Kirn*, ¶ 12. Both cases involved the "reasonable apprehension" element of the offense when the assaulted officers did not actually see the weapon in question.

¶17 In *Steele*, officers received information Steele was in possession of drugs and firearms. Police obtained a search warrant for Steele's residence, but attempted to get Steele outside so they could search his residence peacefully. Steele fled from his residence, pursued by Officer Baumann, until Steele turned, reached into his waistband, and a gunshot rang out—Steele accidentally shot himself in the calf. Officer Baumann then saw Steele drop a pistol. Officer Baumann tackled Steele and another pistol fell to the ground. *Steele*, ¶¶ 5-9. After his conviction, Steele challenged the sufficiency of the evidence, arguing Officer Baumann's testimony at trial only supported that he feared serious bodily injury by what reasonably appeared to be a weapon, because he did not see the pistol before the gunshot rang out. *Steele*, ¶ 31. We held that the officer "did not actually have to see the pistol Steele had on his person in order to feel threatened by use of the pistol." *Steele*, ¶ 40.

9

The crucial difference between *Steele* and the present case is that the pistol used by Steele met the statutory definition of a "weapon" pursuant to Montana law—"an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Section 45-2-101(78), MCA (2001). The broken BB gun used by Stillsmoking does not.

¶18    In *Kirn*, Billings Police Officers Keightley and Dierenfield responded to a noise complaint at an apartment building in Billings. After speaking to the complainant, who told the officers that loud television noises were coming from the apartment downstairs, the officers went to Kirn's apartment to speak with him about the noise. Kirn immediately became agitated upon opening his door and seeing the officers and refused to turn the volume on his TV down. Inside Kirn's apartment, Kirn pushed Officer Keightley and then walked away into a bedroom. Officer Keightley told Officer Dierenfield he thought Kirn was going to get a gun. Kirn then reappeared in a "bladed stance" showing his left side while obscuring his right hand. The officers believed Kirn had left to get a gun, so they drew their weapons and shouted at Kirn to raise his hands. Kirn refused to raise his hands until Officer Keightley warned Kirn he would shoot him. Kirn then raised his hands and dropped a loaded shotgun. *Kirn*, ¶¶ 2-6. Kirn moved to dismiss the case for lack of sufficient evidence, which the district court denied. *Kirn*, ¶ 7.

¶19    On appeal, Kirn argued the officers "could not have had reasonable apprehension of serious bodily injury by use of a weapon because the officers did not see the shotgun until Kirn dropped it in the chair" and "there was not sufficient evidence to prove

reasonable apprehension of serious bodily injury, an essential element of the charge." *Kirn*, ¶ 12. We upheld the district court's denial of Kirn's motion to dismiss for insufficient evidence, finding "Officers Keightley and Dierenfield did not have to personally see the weapon in order to experience reasonable apprehension of serious bodily injury." *Kirn*, ¶ 16. Just like in *Steele*, the crucial difference between *Kirn* and the present case is that *Kirn* involved the use of a "weapon" as defined by the law of Montana—a loaded shotgun—while Stillsmoking's case does not. While there is no doubt that Sergeant Smail reasonably believed he faced death or serious bodily injury when he was facing down what appeared to be a gun held by Stillsmoking, that subjective fear cannot change the objective fact that Stillsmoking's broken BB gun was not a "weapon." Accordingly, Stillsmoking cannot be convicted of a violation of § 45-5-210(1)(b), MCA, because the statute, by its plain language, requires the use of a weapon.

¶20    Finally, the State argues the *In re R.L.S.* "framework" is somehow not applicable in light of our decision in *State v. Smith*, 2004 MT 191, 322 Mont. 206, 95 P.3d 137, where we held:

> [I]t is not technically correct that "use of a weapon" (or, presumably, what appears to the victim to be a weapon) is a requisite element of the offense. The crime of assault with a weapon may be established: (1) if a person uses a weapon, or what reasonably appears to be a weapon, to cause reasonable apprehension of serious bodily injury in the victim, or (2) if a person causes reasonable apprehension that the victim will sustain serious bodily injury from a weapon, if it reasonably appears to the victim that a weapon is involved, whether actually seen or not.

11

*Smith*, ¶ 26. Beyond the simple fact that this Court's *In re R.L.S.* "framework" involved reading the statute and not inserting words which were not there—a practice which is not only still applicable, it is one statutorily required by § 1-2-101, MCA—*Smith* is entirely inapplicable to the present case as it involved this Court harmonizing its decisions regarding the assault with a weapon statute, which contains the "reasonably appears to be a weapon" language. The assault on a peace officer statute does not contain the "reasonably appears to be a weapon" language, and this Court did not address the assault on a peace officer statute in *Smith* at all. This Court's analysis in *Smith* is simply not applicable to the present case.

¶21   Just as we did in *In re R.L.S.*, we conclude the § 45-2-101(79), MCA, "definition of 'weapon' clearly and unambiguously requires that the device at issue actually be capable of producing death or serious bodily injury." *In re R.L.S.*, ¶ 18. If the Legislature intended for the language of "what reasonably appears to be a weapon" to be found in the assault on a peace officer statute it could have put it there. It did not. Because the broken BB gun used by Stillsmoking in the incident was not actually capable of producing death or serious bodily injury, he did not use a "weapon," and, accordingly, cannot be convicted of assault on a peace officer pursuant to § 45-5-210(1)(b), MCA. As no reasonable fact finder could find the essential elements of the crime beyond a reasonable doubt, *Michelotti*, ¶ 9, Stillsmoking's conviction must be vacated and the assault on a peace officer charge dismissed. Because this issue is dispositive, we do not address Stillsmoking's other appealed issues.

12

**CONCLUSION**

¶22   Stillsmoking did not use a "weapon" pursuant to Montana law, and thus he cannot be convicted of assault on a peace officer pursuant to § 45-5-210(1)(b), MCA. Stillsmoking's conviction for assault on a peace officer is therefore vacated and the case is remanded to the District Court with instructions to dismiss the charge with prejudice.

¶23   Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR