DA 19-0715

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 233N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WOLFGANG ALEXANDER LUCAS VASQUEZ,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DC 18-112C and
DC 18-113C
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

          Travis R. Ahner, Flathead County Attorney, Andrew C. Clegg, Alison
Howard, Deputy County Attorneys, Kalispell, Montana

Submitted on Briefs:  August 18, 2021

Decided:  September 14, 2021

Filed:

             _____

Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Wolfgang Alexander Lucas Vasquez (Vasquez) appeals from the Order of Revocation Judgment and Sentence issued by the Eleventh Judicial District Court, Flathead County, on October 22, 2019, which revoked his previously-issued suspended sentences. In its revocation judgment, the District Court sentenced Vasquez to a five-year commitment to the Montana Department of Corrections (DOC) in Cause No. DC-18-112C, along with a consecutive five-year DOC term, all suspended, in Cause No. DC-18-113C. We affirm.

¶3 On November 29, 2018, pursuant to a plea agreement, Vasquez pled guilty to, and was convicted of, one count of Criminal Possession of Dangerous Drugs (CPDD) in DC-18-112C and one count of Criminal Distribution of Dangerous Drugs (CDDD) in DC-18-113C. The District Court orally sentenced Vasquez to a five-year suspended DOC commitment on the CPDD charge, followed by a consecutive five-year suspended DOC commitment on the CDDD charge. The District Court issued its written Judgment & Sentence on January 29, 2019.

3

¶4 On January 17, 2019, Vasquez was pulled over by Flathead County Sheriff's Deputy Mandi Perry (Deputy Perry) while driving. Vasquez had an outstanding warrant for his arrest, so he was detained by Deputy Perry. Deputy Perry observed drug paraphernalia when Vasquez exited the vehicle. Deputy Perry then performed a pat-down search of Vasquez, where she discovered two shotgun shells in his pocket. Vasquez informed Deputy Perry there was a shotgun in the front seat. Deputy Perry then observed a black revolver pistol between the center console and the driver's seat and a sawed-off shotgun on the floorboard in Vasquez's vehicle. Deputy Perry then transported Vasquez to the detention center. On the way to the detention center, Vasquez informed Deputy Perry there was also methamphetamine in the vehicle. Vasquez's vehicle was taken to the impound lot, where, two days after its arrival and before a search warrant was executed, the vehicle was broken into and the guns, drugs, and paraphernalia were stolen.

¶5 On January 25, 2019, the State filed a Petition for Revocation of Suspended Sentence, along with a Report of Violation prepared by Probation and Parole Officer Amy Gault (PO Gault), alleging Vasquez had violated conditions of his probation. PO Gault's report alleged Vasquez had committed a compliance violation by using and possessing drugs, that he had committed a non-compliance violation by possessing the revolver, sawed-off shotgun, and ammunition, and recommended the District Court revoke Vasquez's suspended sentence. At a hearing on February 21, 2019, Vasquez denied committing the violations alleged.

¶6	The District Court then held an adjudicatory hearing on June 20, 2019, and July 3, 2019. Deputy Perry testified at the June 20 hearing, and recounted her traffic stop of Vasquez, her discovery of the ammunition, revolver, sawed-off shotgun, and drug paraphernalia, and the theft of the items from Vasquez's vehicle at the impound lot. PO Gault testified at the July 3 hearing and noted she would not have filed a report of violation based on either Vasquez's admission to drug use or his possession of drug paraphernalia as those were compliance violations, but was required to file a report of violation due to Vasquez's possession of firearms and ammunition, which are non-compliance violations. Vasquez argued there was not sufficient evidence to prove the firearms were operable, as they were not tested for operability prior to being stolen from Vasquez's vehicle, and therefore the State did not meet its burden of demonstrating Vasquez violated the no-firearm condition of his suspended sentences. The District Court found the State proved, by a preponderance of the evidence, Vasquez had violated the no-firearm condition, and set the matter for a dispositional hearing on August 8, 2019. Vasquez did not appear at that hearing, so the District Court issued a bench warrant. After being arrested on the bench warrant, Vasquez appeared for his dispositional hearing on September 26, 2019. Based upon the joint recommendation of the parties, the District Court revoked Vasquez's previously-issued sentences and sentenced him to a five-year DOC commitment on the CPDD charge, followed by a consecutive five-year suspended DOC commitment on the CDDD charge. Vasquez did not receive credit for street time, but did receive credit

5

for time served. Vasquez appeals, asserting the District Court abused its discretion by revoking his suspended sentences.

¶7 We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion and whether the court's decision was supported by a preponderance of the evidence in favor of the State. *State v. Beam*, 2020 MT 156, ¶ 6, 400 Mont. 278, 465 P.3d 1178 (citing *State v. Nelson*, 1998 MT 227, ¶ 16, 291 Mont. 15, 966 P.2d 133). As revocation decisions involve both legal and factual findings, we review a district court's legal findings de novo and its factual findings for clear error. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108 (citing *State v. Johnson*, 2018 MT 277, ¶ 10, 393 Mont. 320, 430 P.3d 494). "A district court's factual findings are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made." *Johnson*, ¶ 10 (citing *State v. Reynolds*, 2017 MT 317, ¶ 16, 390 Mont. 58, 408 P.3d 503).

¶8 As he did before the District Court, Vasquez argues on appeal that, because the firearms discovered in his vehicle were never tested for operability, the State did not present sufficient evidence he violated the no-firearm condition of his suspended sentences. The State responds first that Vasquez committed, beyond the firearms violations, other non-compliance violations which provided the District Court with a separate and independent basis to revoke Vasquez's sentences. The State further asserts this Court should reject Vasquez's conflation of the statutorily-defined term "weapon" with the

6

non-defined term "firearm," and determine sufficient evidence exists to support the District Court's revocation decision.

¶9 At the outset, we briefly address the State's argument that the drug violations, as alleged, provide a separate and independent basis to affirm the District Court's revocation of Vasquez's suspended sentences. We note, "[a] defendant is entitled to notice of all alleged violations leading to the petition to revoke." *State v. Sebastian*, 2013 MT 347, ¶ 18, 372 Mont. 522, 313 P.3d 198 (citing *State v. Nelson*, 225 Mont. 215, 218-19, 731 P.2d 1299, 1302 (1987)). Below, the State only alleged the firearm violations were non-compliance violations. PO Gault's report of violation specifically lists the drug violations as compliance violations. PO Gault further testified during the adjudication hearing she would not have filed the report of violation based on the drug allegations, but only did so because of Vasquez's possession of the firearms. Further, the District Court clearly revoked Vasquez based on the firearm violation:

> The [c]ourt finds, due to the direct evidence of Mandi Perry observing the firearms and the circumstantial evidence of the Defendant having shotgun shells on his person, or ammunition, that the [State] has produced sufficient evidence to the [c]ourt, and the [c]ourt finds the State's proved its case beyond -- or by a preponderance of the evidence.

The inescapable conclusion of the District Court's findings is that Vasquez's sentences were revoked for the firearm violations—not for any alleged drug use or possession. As the State repeatedly disclaimed its reliance on any alleged drug violations as the reason to revoke Vasquez's sentences below—treating them as compliance violations, rather than non-compliance violations—we reject the State's new argument, presented for the first

7

time on appeal, that the alleged drug violations provided an independent basis to revoke Vasquez's sentences in this case.

¶10 We turn now to Vasquez's argument the firearms in this case were never demonstrated to be operable by the State and therefore are not "weapons" which could provide a basis for the revocation of his suspended sentences. The State responds it does not need to prove Vasquez possessed "weapons," but only that he possessed "firearms." We agree with the State.

¶11 "Weapon" is a statutorily-defined term in Montana and "means an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Section 45-2-101(79), MCA. In reviewing statutes which require the use of a "weapon" as an element, we have held the statutory "definition of 'weapon' clearly and unambiguously requires that the device at issue actually be capable of producing death or serious bodily injury." *State v. Stillsmoking*, 2020 MT 154, ¶ 21, 400 Mont. 256, 470 P.3d 183 (quoting *In re R.L.S.*, 1999 MT 34, ¶ 18, 293 Mont. 288, 977 P.2d 967). Here, however, Vasquez's suspended sentences were revoked for the non-compliance violation of possessing firearms, not for possessing "weapons." *See* § 46-18-203(11)(b)(ii), MCA. The specific condition of his suspended sentences the State alleged Vasquez violated stated Vasquez was "prohibited from using, owning, possessing, transferring, or controlling any firearm, ammunition (including black powder), weapon, or chemical agent such as oleoresin capsicum or pepper spray." By its plain language,

8

Vasquez was prohibited from possessing both "firearm[s]" and "weapon[s]" under the terms of his suspended sentences.

¶12 Faced with this language, Vasquez argues firearms are merely a subset of weapons—such that, while not all weapons are firearms, all firearms are weapons. We note that "firearm" is not defined in the Montana code. "Where the Legislature has not defined a statutory term, we consider the term to have its plain and ordinary meaning, and may consider dictionary definitions, prior case law, and the larger statutory scheme in which the term appears." *State v. Christensen*, 2020 MT 237, ¶ 95, 401 Mont. 247, 472 P.3d 622 (citations omitted). "We may also consider similar statutes from other jurisdictions and legislative history for guidance in interpreting a statute." *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666 (citations omitted).

¶13 Black's Law Dictionary defines "firearm" as "[a] weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive." *Firearm*, *Black's Law Dictionary* (11th ed. 2019). "Firearm" is also defined in the federal law:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). Federal courts, interpreting federal statutes which require the possession of a "firearm," have consistently found the statutory language "does not require that the weapon be operable." *United States v. Goodheim*, 686 F.2d 776, 778 (9th Cir. 1982) (citing 18 U.S.C. § 921(a)(3)); *United States v. Fisher*, 137 F.3d 1158, 1166 (9th

9

Cir. 1998) (citing *Goodheim*, 686 F.2d at 778). *See also United States v. Christmann*, 193 F.3d 1023, 1024 (8th Cir. 1999) (interpreting "firearm" as it applies to the federal bank robbery statute and finding "[t]he definition turns on what the weapon is designed to do, not on whether it is capable of doing its job at the particular moment that the crime was committed").

¶14 We find these interpretations of "firearm" persuasive. While Vasquez is correct in that the definition of "firearm" in both Black's Law Dictionary and in the federal law begins by defining them as "weapon[s]," we agree with the federal courts that the ultimate definition of firearm "turns on what the weapon is designed to do, not on whether it is capable of doing its job at the particular moment[.]" *Christmann*, 193 F.3d at 1024. Both of Vasquez's guns were firearms, which he was prohibited from possessing by the terms of his suspended sentences. Possession of firearms is a non-compliance violation, § 46-18-203(11)(b)(ii), MCA, which allowed the District Court to "revoke the suspension of sentence and require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence[.]" Section 46-18-203(7)(a)(iii), MCA. In addition, Vasquez was found with ammunition on his person, which also violated the conditions of his suspended sentences which prohibited him from "using, owning, possessing, transferring, or controlling any firearm, ammunition (including black powder), weapon, or chemical agent such as oleoresin capsicum or pepper spray." We find no clear error in the District Court's findings of fact in this case, and with Vasquez shown by a preponderance

10

of the evidence to be in possession of a revolver, sawed-off shotgun, and ammunition—all in violation of the conditions of his suspended sentences—the District Court did not abuse its discretion in revoking Vasquez's suspended sentences.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE